RUSSELL L. McLEAN, III, PLAINTIFF v. PHIL MECHANIC, DEFENDANT

No. 9330SC849

(Filed 6 September 1994)

1. **Pleadings § 15 (NCI4th)— punitive damages in slander action—damage award properly set aside as sanction**

The trial court did not err in setting aside an award for punitive damages in a slander action as a sanction where plaintiff prayed for punitive damages in excess of $100,000 in violation of N.C.G.S. § 1A-1, Rule 8(a)(2).

**Am Jur 2d, Pleading §§ 28 et seq.**

2. **Husband and Wife § 61 (NCI4th)— criminal conversation claim proved—no award of nominal damages—setting aside punitive damages error**

The trial court erred in setting aside a punitive damages award with respect to a criminal conversation claim where the jury found that defendant had committed criminal conversation, awarded zero compensatory or nominal damages, and awarded punitive damages, since plaintiff was entitled to at least nominal damages which would in turn support an award of punitive damages.

**Am Jur 2d, Husband and Wife §§ 485, 486.**

**Punitive or exemplary damages in action by spouse for alienation of affections or criminal conversation. 31 ALR2d 713.**

3. **Evidence and Witnesses § 2211 (NCI4th)— criminal conversation—DNA testing of underwear stains—admissibility of results**

The trial court in an action for criminal conversation did not err in admitting DNA test results into evidence, and defendant could not complain on appeal with regard to the foundation laid for the DNA evidence; furthermore, any issues with regard to chain of custody of plaintiff's wife's underwear on which DNA testing was performed were for the jury to decide.

**Am Jur 2d, Expert and Opinion Evidence §§ 278 et seq.**

**Admissibility of DNA identification evidence. 84 ALR4th 313.**

Appeal by plaintiff and defendant from judgment entered 31 March 1993 by Judge Robert M. Burroughs in Haywood County Superior Court. Heard in the Court of Appeals 20 April 1994.

*Brown, Ward, Haynes, Griffin & Seago, by Randal Seago, for plaintiff appellant-appellee.*

*Patrick U. Smathers, P.A., by Patrick U. Smathers, for defendant appellant-appellee.*

COZORT, Judge.

Plaintiff filed two causes of action against defendant: first, an action for criminal conversation, intentional infliction of emotional

distress, and punitive damages; second, a claim for slander and punitive damages. The two cases were consolidated for trial. The trial court entered a default against defendant in the action for slander and denied defendant's motion to set aside the default. Defendant subsequently filed a motion to dismiss plaintiff's complaint, or in the alternative, for sanctions against plaintiff for violating N.C.R. Civ. P. 8(a)(2) by pleading punitive damages in excess of $10,000.00. The trial court granted the motion and dismissed the claim for punitive damages as a sanction. The court submitted the issue to the jury for a determination on the matter in the event the dismissal was reversed on appeal. The jury awarded plaintiff $1,000.00 in compensatory damages and $20,000.00 in punitive damages in the slander action. The jury also found that defendant did not inflict severe emotional distress on plaintiff.

In the action for criminal conversation, the jury found the defendant had criminal conversation with plaintiff's spouse. The jury awarded zero compensatory or nominal damages and $10,000.00 in punitive damages in that action. The trial court set aside the punitive damages verdict. Both plaintiff and defendant appeal, raising various issues related to the trial and verdicts. We find no error in the main trial and affirm the dismissal of the punitive damages in the slander case. We reverse the trial court's ruling to set aside the punitive damages award in the criminal conversation action.

The underlying facts as presented at trial are as follows: The plaintiff, Russell L. McLean, III, an attorney in Waynesville, North Carolina, and his wife, Susie McLean, were experiencing marital difficulties following the birth of their daughter in April of 1990. Plaintiff and Mrs. McLean were introduced to defendant through a mutual friend. Defendant and Mrs. McLean became involved in real estate business dealings and became friends. Defendant thereafter convinced Mrs. McLean to accompany him on a group trip to Aruba. Mrs. McLean and a friend, Marsha Gilliland, travelled to Aruba with defendant and several others from 30 August to 4 September 1991. Mrs. McLean had told plaintiff she was going to Myrtle Beach for a week with a friend.

When Mrs. McLean returned from Aruba, she did not unpack her suitcase immediately. Plaintiff searched through the suitcase and discovered condoms and spermicide in her makeup bag. Having had a vasectomy in 1991, plaintiff suspected his wife was having sexual intercourse with another man. He collected four pair of women's

underwear from his wife's suitcase and eventually sent the panties to LIFECODES laboratory in Stamford, Connecticut, for DNA testing. The analysis revealed that some of the underpants were stained with semen. The LIFECODES laboratory compared the DNA pattern in the semen to the DNA pattern in a sample of defendant's blood. Experts concluded the semen in the panties was that of defendant to greater than a 99% level of certainty. Plaintiff thereupon filed the action for criminal conversation on 17 December 1991.

In response to plaintiff's institution of legal proceedings, defendant telephoned some of plaintiff's clients and told them plaintiff had been engaged in a homosexual affair with his best friend. Defendant additionally telephoned one of plaintiff's clients and told her that, due to a mistake by plaintiff, the mortgage on her home was being foreclosed. Plaintiff's clients began requesting new counsel, and the law partnership suffered financially. Based on these additional facts, plaintiff filed the slander action on 17 August 1992.

The trial court dismissed the punitive damages portion of the slander action because the plaintiff demanded more than $10,000.00 in punitive damages, in violation of Rule 8(a)(2) of the Rules of Civil Procedure. This dismissal negated the jury's contingent award of $20,000.00 in punitive damages in the slander action. In the criminal conversation action, the trial court struck the jury's award of $10,000.00 in punitive damages because the jury awarded nothing for nominal or compensatory damages. The result is that, having prevailed on both torts, plaintiff received only $1,000.00 in damages.

[1] We turn first to the issues raised by plaintiff on appeal. Plaintiff claims the trial court erred in setting aside the award of punitive damages in the slander action. The trial judge heard defendant's sanction motion prior to trial and ruled that he intended to strike the punitive damages claim if any were awarded in the slander case, as a sanction for violating N.C.R. Civ. P. 8(a)(2). When the jury returned a verdict awarding plaintiff $20,000.00 in punitive damages, the trial court set aside the recovery.

Plaintiff's complaint in the slander action prayed for "punative [*sic*] damages in excess of $100,000.00." Rule 8(a)(2) of the North Carolina Rules of Civil Procedure states in part:

> In all negligence actions and in all claims for punitive damages in any civil action, wherein the matter in controversy exceeds the sum or value of ten thousand ($10,000), the pleading shall not

state the demand for monetary relief, but shall state that the relief demanded is for damages incurred or to be incurred in excess of ten thousand dollars ($10,000).

N.C. Gen. Stat. § 1A-1, Rule 8(a)(2) (1990). One of the permissible sanctions for violating N.C.R. Civ. P. 8(a)(2) is dismissal pursuant to N.C.R. Civ. P. 41(b). *Jones v. Boyce*, 60 N.C. App. 585, 586, 299 S.E.2d 298, 300 (1983). Although a dismissal with prejudice pursuant to Rule 41(b) is available as a sanction for a violation of Rule 8(a)(2), it is not the only available sanction and should be imposed only where the trial court determines that less drastic sanctions are insufficient. *Foy v. Hunter*, 106 N.C. App. 614, 418 S.E.2d 299 (1992). In the present case, the trial court had the authority to dismiss the entire case, not just the award of punitive damages. As a result, we conclude the trial court did not err in striking the punitive damages award in the slander case as a sanction.

[2] Next, plaintiff contends the trial court erred in setting aside the punitive damages award with respect to the criminal conversation claim. The trial court instructed the jury that if it found that defendant committed criminal conversation with plaintiff's wife, the jury could award plaintiff nominal or compensatory damages. The trial court also instructed on punitive damages and defined each type of damages for the jury. The jury returned a verdict (1) finding that defendant committed criminal conversation with Mrs. McLean; (2) awarding zero compensatory or nominal damages; and (3) awarding $10,000.00 in punitive damages. The trial court set aside the punitive damages award based on a finding that no punitive damages could be awarded where the jury determined the plaintiff was not entitled to compensatory or nominal damages despite having been instructed as to those damages. We reverse the trial court's action in setting aside the award of punitive damages in the criminal conversation claim.

In *Hawkins v. Hawkins*, 331 N.C. 743, 745, 417 S.E.2d 447, 449 (1992), our Supreme Court affirmed this Court's determination that " '[o]nce a cause of action is established, plaintiff is entitled to recover, as a matter of law, nominal damages, which in turn support an award of punitive damages.' " *Id.* (quoting *Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474 (1991)). The jury in *Hawkins* found the defendant had committed an assault on the plaintiff; however, it failed to award compensatory damages. The jury awarded punitive damages in the amount of $25,000.00. The jury had been instructed on compensatory and punitive damages, but not nominal

damages. Plaintiff argued in *Hawkins* that, because she had proved all the elements of her cause of action, she was entitled to recover nominal damages "whether submitted or not," and should receive the punitive damages award. The Court held that, because the plaintiff was entitled to at least nominal damages, that fact was sufficient to support an award of punitive damages. *Id.*

Here, despite the plaintiff's success in proving his action for criminal conversation, the jury failed to follow the trial court's instructions by awarding at least nominal damages. Since the instruction given on nominal damages was not included in the record before us, we must invoke the presumption that the instruction was correct. "The longstanding rule is that there is a presumption in favor of regularity and correctness in proceedings in the trial court, with the burden on the appellant to show error." *Harvey v. Jarman*, 76 N.C. App. 191, 195-96, 333 S.E.2d 47, 50 (1985). Because we presume the instruction on nominal damages was given correctly and nominal damages were recoverable, it is apparent the jury merely failed to follow the judge's directions. Accordingly, the trial court erred in striking the punitive damages award in the criminal conversation action. We reverse that portion of the judgment and remand the cause for entry of punitive damages. We have reviewed the remaining issues plaintiff has raised on appeal and conclude they do not amount to reversible error.

Turning to the defendant's appeal, we first consider whether the trial court erred in denying his motion to set aside the default judgment in the slander and emotional distress action. Plaintiff obtained a default judgment from the trial court in the slander action on 22 September 1992. Defendant filed a motion to set aside the default on 28 September 1992, arguing the judgment should be set aside pursuant to N.C.R. Civ. P. 60(b) under subsections (1) for mistake, inadvertence, surprise or excusable neglect, or (6) for any other reason justifying relief from the operation of the judgment. Generally, a motion for setting aside a judgment pursuant to Rule 60(b) is addressed to the sound discretion of the trial court, and the standard of appellate review is limited to determining whether the court abused its discretion. *Brown v. Windhom*, 104 N.C. App. 219, 221, 408 S.E.2d 536, 537 (1991). The trial court summarily denied the motion to set aside the default judgment without making findings of fact. Although a better practice would be to make findings of fact when ruling on a Rule 60(b) motion, the trial court is not required to do so. *Nations v. Nations*, 111 N.C. App. 211, 214, 431 S.E.2d 852, 854

(1993). We have reviewed the record as well as defendant's arguments and find the trial court did not err in failing to set aside the default judgment in the slander action.

[3] Next, defendant complains the trial court committed error in its admission of the DNA test results into evidence. First, defendant argues the trial court erred in admitting into evidence the deposition testimony of certain lab technicians concerning the DNA evidence because of an improper foundation. Specifically, defendant claims the testimony read in court was too complicated for the jury to understand without some background information making it clear that DNA tests are "tests of exclusion, not inclusion."

This Court and our Supreme Court have recognized that, with the proper foundation, DNA profile testing is generally admissible as an established technique considered to be reliable within the scientific community. *See Batcheldor v. Boyd*, 108 N.C. App. 275, 281, 423 S.E.2d 810, 814, *disc. review denied*, 333 N.C. 254, 426 S.E.2d 700 (1992); *State v. Pennington*, 327 N.C. 89, 101, 393 S.E.2d 847, 854 (1990). Here, plaintiff read into evidence the depositions of Lauren Galbreath and Dr. Michael L. Baird from LIFECODES laboratory. Defendant opted not to attend the taking of either deposition held out of state, and no objections were made during the deposition proceeding. A review of the transcript also discloses that defendant failed to object to the foundation laid for the DNA evidence presented through the depositions. Defendant therefore has waived review of this issue on appeal. Furthermore, Tim Grooman from Roche Bio-Medical Laboratories, who drew the blood sample from defendant, stated on cross-examination that a DNA test is performed "[t]ypically . . . to rule out an individual," thus establishing the test's exclusivity. We therefore find no error with respect to the laying of the foundation for admission of the evidence concerning the DNA test.

Defendant additionally claims the trial court erred in allowing the deposition testimony on the DNA tests into evidence because there were conflicts in the testimony between the two experts regarding the procedure and interpretation of DNA testing.

[W]here unfair prejudice is not clear and where there is merely conflicting expert testimony regarding interpretation of the DNA evidence or where two experts have reached differing results based on independent analyses of the DNA, the issue becomes one of credibility of the experts. In that situation the jury is obligated to determine what weight each expert's testimony should receive.

McLEAN v. MECHANIC

[116 N.C. App. 271 (1994)]

*State v. Bruno*, 108 N.C. App. 401, 409-10, 424 S.E.2d 440, 445, *disc. review denied, appeal dismissed*, 333 N.C. 464, 428 S.E.2d 185 (1993). As a result, it was for the jury to sort through any inconsistencies arising from the evidence presented, and to determine what weight to assign that evidence.

The final issue defendant raises in relation to the DNA evidence is a challenge to the chain of custody established for the underwear from which the semen samples were taken. Defendant argues the chain of custody was unreliable in that "[t]he testimony at the trial established that at least three different men touched and handled the underwear prior to its testing[.]" Defendant's argument is unsupported by authority in his brief and is technically deemed abandoned under N.C.R. App. P. 28(b)(5). We have nonetheless reviewed the issue and find no error.

Our Supreme Court has stated:

"The admissibility of any such evidence remains subject to attack. Issues pertaining to relevancy or prejudice may be raised. For example, expert testimony may be presented to impeach the particular procedures used in a specific test or the reliability of the results obtained. In addition, traditional challenges to the admissibility of evidence such as the contamination of the sample or chain of custody questions may be presented. These issues relate to the weight of the evidence. The evidence may be found to be so tainted that it is totally unreliable and, therefore, must be excluded."

*State v. Pennington*, 327 N.C. 89, 101, 393 S.E.2d 847, 854 (1990) (quoting *State v. Ford*, 301 S.C. 485, 490, 392 S.E.2d 781, 784 (1990)). At trial, testimony by various witnesses indicated the plaintiff took the underwear from his wife's suitcase upon her return from Aruba. He displayed them to his law partner. His law partner kept the panties behind a television in his bedroom for several days until they were transferred to plaintiff's attorney. Plaintiff's attorney sent the underwear to LIFECODES for testing. Considering the nature and circumstances of plaintiff's cause of action and the use of the DNA test to offer proof that defendant's semen was in Mrs. McLean's underwear, we find it nearly impossible for any other individual to have "tainted" the evidence in such a manner as to alter the results of the DNA test. We therefore conclude any kinks in the chain of custody were for the jury's consideration. We find no prejudicial error.

**INTEGON INDEMNITY CORP. v. UNIVERSAL UNDERWRITERS INS. CO.**

[116 N.C. App. 279 (1994)]

We have reviewed defendant's remaining issues and find no reversible error. In sum, we reverse that part of the trial court's judgment setting aside the punitive damages award in the criminal conversation case, we remand for entry of $10,000.00 in punitive damages, and we affirm the remainder of the judgment.

Affirmed in part, reversed in part, and remanded.

Judges GREENE and MARTIN concur.