D.G. II, LLC, Plaintiff v. CLIFFORD E. NIX and JOHNSON BOAT WORKS, Defendants

No. COA10-1458

(Filed 5 July 2011)

**1. Appeal and Error— timeliness of appeal—party designated to prepare judgment failed to serve on other party**

Defendants' motion to dismiss plaintiff's appeal as untimely in a breach of contract and unfair and deceptive trade practices case was denied. Since defendants were the party designated by the trial court to prepare the judgment and they never served plaintiff with a copy of the judgment, they were not in compliance with N.C.G.S. § 1A-1, Rules 58 and 59. Thus, plaintiff timely filed within the ninety days under Rule 59.

**2. Appeal and Error— interlocutory orders and appeals— subject matter jurisdiction**

The trial court had subject matter jurisdiction in a breach of contract and unfair and deceptive trade practices case after plaintiff appealed from a nonappealable interlocutory order that did not completely dispose of the case. Further action was required by the trial court to finally adjudicate the parties' claims.

**3. Unfair Trade Practices— summary judgment—allegations not sufficiently egregious or aggravating**

The trial court did not err by granting defendants' motion for partial summary judgment on plaintiff's claim for unfair and deceptive trade practices. While the facts supported plaintiff's claim for breach of contract, they were not sufficiently egregious or aggravating.

**4. Damages and Remedies— jury's failure to award nominal damages—no prejudicial error**

The trial court did not abuse its discretion in a breach of contract and unfair and deceptive trade practices case by denying plaintiff's motion for a new trial based on the jury's failure to follow the trial court's instruction to write a nominal amount in its verdict after declining to award plaintiff actual damages. The trial court's entry of the October 2009 order entitled plaintiff to recover nominal damages as a matter of law.

## D.G. II, LLC v. NIX

[213 N.C. App. 220 (2011)]

Appeal by plaintiff in Dare County Superior Court from an order entered by Judge Alma L. Hinton on 2 October 2009, and Judge Jerry R. Tillett's judgment entered 7 May 2010 and his order entered 15 September 2010. Heard in the Court of Appeals 14 April 2011.

*Vandeventer Black LLP, by Norman W. Shearin and Robert L. O'Donnell, for plaintiff-appellant.*

*C. Everett Thompson, II, for defendant-appellees.*

CALABRIA, Judge.

D.G. II, LLC ("plaintiff"), appeals the trial court's 2 October 2009 order granting Clifford E. Nix's ("Nix") and Johnson Boat Works' ("JBW") (collectively, "defendants") motion for partial summary judgment against plaintiff on the issue of, *inter alia*, unfair and deceptive practices ("UDP"); the 7 May 2010 judgment denying additional damages for plaintiff; and the 15 September 2010 order denying plaintiff's motion for a new trial. We affirm.

## I. BACKGROUND

On 11 May 2006, John Floyd ("Floyd") entered into a contract ("the contract") on plaintiff's behalf with defendants for the construction of a 57-foot sport fishing boat ("the boat") to be used in a charter-for-hire fishing business. Under the terms of the contract, plaintiff was required to pay a deposit in the amount of $100,000.00 ("the deposit") to defendants, and to pay the balance of the purchase price of $1,250,000.00 within five days of receipt of notice from defendants that the boat was completed. Furthermore, defendants agreed to build and deliver the boat in accordance with the specifications stated in the contract. The contract required defendants to transfer the boat's title and deliver possession of the boat to plaintiff on or before 31 July 2006. On 11 May 2006, plaintiff deposited $100,000.00 with defendants.

Prior to 12 July 2006, defendants informed Floyd that the boat would not be completed until 7 September 2006 rather than 31 July 2006, "due primarily to the diversion of subcontractors to other boats under construction by competitors." As compensation for the delay, defendants proposed to include a "teak deck," worth approximately $5,000.00, at no additional cost to plaintiff. Defendants also offered plaintiff the option to terminate the contract and recover its deposit in full. Plaintiff declined to terminate the contract and elected to proceed.

On 14 July 2006, plaintiff delivered a letter to defendants explaining the reasons that defendants' delay in completing the boat until 7 September 2006 was "unacceptable" and "disastrous." Plaintiff had made "extensive plans to launch its charter business late in the 2006 season" since the "fishing season will be drawing to an end in the late summer or early fall of this year . . . ." Plaintiff also stated that the delay in delivery would prevent its participation "in the Pirate's Cove Tournament in mid-August . . ." and that "[i]t is hard to overstate the importance of participation in this tournament to [plaintiff's] business." Plaintiff reminded defendants that participation in the tournament was discussed at the time the parties signed the contract.

Plaintiff also proposed a counteroffer in the 14 July 2006 letter to defendants and offered defendants one of three options: (1) defendants would pay plaintiff consequential damages of $100,750.00 and deliver the boat "at a mutually agreeable time" at the price and under the conditions provided for in the contract; (2) plaintiff would provide an irrevocable letter of credit for the balance of the purchase price owed on the boat on or before 2 August 2006, defendants would exercise the letter of credit when plaintiff took possession of the boat in April 2007, the boat would meet certain additional inspection and certification requirements, and defendants would pay plaintiff the captain's salary of more than $4,000.00 per month plus employment expenses until 31 March 2007 or delivery of the boat; or (3) plaintiff would take delivery of the boat during the first week of October 2006 for the purchase price stated in the contract, along with eight additional specifications to be added to the boat, and payment of two months' captain's salary and expenses.

Prior to receiving a response to the 14 July 2006 letter, plaintiff notified defendants on 31 July 2006 that it was "ready, willing and able" to perform under the contract. However, defendants did not deliver the boat to plaintiff on 31 July 2006, or at any other time. On 3 August 2006, Floyd informed defendants again that plaintiff desired to have the boat.

On 9 August 2006, defendants informed plaintiff that Floyd "made direct threats toward [defendants] concerning litigation that he intends to file and the damages . . . he plans to seek. In other words, [defendants] believe that Mr. Floyd intends to file suit regardless of any proposal for completion of the boat." On 10 August 2006, defendants informed plaintiff, in writing, that defendants "will be terminating the contract based on [plaintiff's] anticipatory breach . . . ." On 11 August 2006, plaintiff sent a letter to defendants stating that the boat

**D.G. II, LLC v. NIX**

[213 N.C. App. 220 (2011)]

"must be completed and delivered no later than October 13, 2006" and proposed another counteroffer. Defendants did not respond to the proposal.

On 18 August 2006, defendants informed plaintiff that it was their "understanding" that plaintiff would not be purchasing the boat. Defendants mailed a draft of an agreement which would "terminate[]" the relationship" between the parties, and offered to refund the deposit if plaintiff released all claims it may have had against defendants under the contract. Also on 18 August 2006, defendants signed a contract to sell the boat to another buyer named Christopher Schultz ("Schultz") for $1,475,000.00. The sale price to Schultz was $125,000.00 more than the price of the boat stated in the contract between plaintiff and defendants.

On 6 September 2006, plaintiff filed a complaint against defendants in Dare County Superior Court, seeking, *inter alia*, specific performance of the contract, damages in an amount in excess of $10,000.00, and a restraining order prohibiting defendants from "selling, assigning, or in any way encumbering, damaging or misusing" the boat. Plaintiff also filed an amended complaint, adding Schultz and the broker for the Schultz sale, MacGregor Yachts, Inc. ("MacGregor"), as defendants. Plaintiff asserted a claim of UDP against defendants and MacGregor and sought, *inter alia*, specific performance and damages for lost profits and income as a result of its inability to proceed with its business plan for the operation of a commercial sport fishing enterprise during the period from 1 August 2006 until 18 October 2006. Approximately one month later, Schultz requested that defendants return his deposit for the boat. Later, defendants entered into a second contract with Schultz to sell him the boat for $1,400,000.00, which was $50,000.00 more than the amount stated in the contract between plaintiff and defendants. Subsequently, the trial court granted Schultz's and MacGregor's motion to dismiss.

On 21 December 2006, plaintiff informed defendants that it desired to purchase the boat under the contract and "would drop all charges against [defendants]." Defendants answered and asserted counterclaims for, *inter alia*, breach of contract. On 28 March 2007, plaintiff again expressed interest in purchasing the boat and "resolving outstanding matters regarding various claims at a later date." Plaintiff deposited the amount of $1,250,000.00 in its attorney's trust account and was prepared to close immediately and take possession of the boat. On 2 July 2007, plaintiff requested that defendants return the deposit, but defendants did not respond.

**D.G. II, LLC v. NIX**

[213 N.C. App. 220 (2011)]

On 1 September 2009, defendants moved for summary judgment, contending that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. On 4 September 2009, plaintiff moved for partial summary judgment "on the breach of contract cause of action" and, in the prayer for relief, asked the court to "hold open for further adjudication the remaining causes of action and damages." In the 2 October 2009 order ("the October 2009 order"), the trial court granted plaintiff's motion for partial summary judgment on its breach of contract claim and defendants' motion for partial summary judgment on the UDP claim. The trial court also held open for further adjudication the issue of damages on plaintiff's breach of contract claim.

On 30 November 2009, the trial court entered an order ("the November 2009 order") awarding plaintiff damages against defendants, jointly and severally, in the amount of $100,000.00, representing plaintiff's deposit toward the purchase price of the boat, together with interest at the rate of eight percent from 10 August 2006 until paid. The trial court denied plaintiff's motion for summary judgment regarding other damages.

On 27 April 2010, the jury was asked: "What amount of money damages is D.G. II, entitled to recover from the defendants?" The jury returned the verdict sheet with the answer to the amount of damages as a zero ("0"). On 7 May 2010, the trial court entered a judgment ("the May 2010 judgment") reflecting the jury's verdict that plaintiff was not entitled to any additional damages from defendants. The trial court also taxed "all costs of court" against defendants. Plaintiff served defendants with a copy of the judgment on 17 May 2010.

On 1 June 2010, plaintiff filed a motion for a new trial and served defendants with a copy. The trial court denied the motion on 15 September 2010 ("the September 2010 order"). Plaintiff filed notice of appeal on 23 September 2010 from the October 2009 order, the May 2010 judgment, and the September 2010 order.

## II. INITIAL MATTERS

### A. Motion to Dismiss Appeal

[1] As an initial matter, defendants argue that this Court lacks jurisdiction to consider plaintiff's appeal, and therefore it should be dismissed. More specifically, defendants claim that the time for filing plaintiff's notice of appeal was not tolled when it filed a motion for a new trial pursuant to N.C. Gen. Stat. § 1A-1, Rule 59 (2009) ("Rule 59"). We disagree.

D.G. II, LLC v. NIX

[213 N.C. App. 220 (2011)]

Rule 3(c) of the North Carolina Rules of Appellate Procedure ("Appellate Rule 3") requires a party to file a written notice of appeal within thirty days after entry of the judgment. N.C. R. App. P. 3 (2009). However, Appellate Rule 3(c)(3) provides, "if a timely motion is made by any party for relief under Rules 50(b), 52(b) or 59 of the Rules of Civil Procedure, the thirty day period for taking appeal is tolled as to all parties until entry of an order disposing of the motion[.]" N.C. R. App. P. 3(c)(3) (2009).

Pursuant to N.C. Gen. Stat. § 1A-1, Rule 58 ("Rule 58"),

> a judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court. The party designated by the judge or, if the judge does not otherwise designate, the party who prepares the judgment, shall serve a copy of the judgment upon all other parties within three days after the judgment is entered. Service and proof of service shall be in accordance with Rule 5. If service is by mail, three days shall be added to the time periods prescribed by Rule 50(b), Rule 52(b), and Rule 59. All time periods within which a party may further act pursuant to Rule 50(b), Rule 52(b), or Rule 59 shall be tolled for the duration of any period of noncompliance with this service requirement, provided however that no time period under Rule 50(b), Rule 52(b), or Rule 59 shall be tolled longer than 90 days from the date the judgment is entered.

N.C. Gen. Stat. § 1A-1, Rule 58.

> Rule 59(b) provides that "[a] motion for a new trial shall be served not later than 10 days after entry of the judgment." N.C.G.S. § 1A-1, Rule 59(b) (1990). According to the clear language of Rule 58, the moving party is entitled to three additional days to file a motion for a new trial pursuant to Rule 59 if service of the judgment was made by mail. Therefore, the moving party is allowed a total of thirteen days from the date that the judgment is entered to serve by mail a motion for a new trial, rather than the ten-day period provided in Rule 59(b).

*Stem v. Richardson*, 350 N.C. 76, 78, 511 S.E.2d 1, 2 (1999). Defendants claim plaintiff was not entitled to the tolling in Rules 58 and 59(b) because the date defendants were served with a copy of the judgment was too late, and plaintiff was not entitled to the three-days' tolling for service by mail. We disagree.

**D.G. II, LLC v. NIX**

[213 N.C. App. 220 (2011)]

In the instant case, the trial court directed defendants, as the prevailing party, to prepare the written judgment reflecting the court's oral judgment that was announced in open court. Defendants prepared and filed the judgment on 7 May 2010. However, defendants failed to serve plaintiff with a copy of the judgment. Plaintiff obtained a copy of the judgment from the file in the Dare County Courthouse and, on 17 May 2010, mailed a copy of the judgment along with a Certificate of Service to defendants. Defendants contend that plaintiff was the party who failed to comply with Rules 58 and 59 and Appellate Rule 3. Defendants are mistaken.

According to Rule 58, all time periods within which a party may further act pursuant to Rule 59 shall be tolled during any period of noncompliance with the service requirement. Therefore, 17 May 2010 is the earliest possible date for determining the timeliness of plaintiff's Motion for New Trial. However, since defendants, as the party designated by the trial court to prepare the judgment, never served plaintiff with a copy of the judgment, the ten-day period in which plaintiff was entitled to file its Motion for New Trial had not been triggered when it filed its motion on 1 June 2010.

If, *arguendo*, 17 May 2010 is used to determine whether plaintiff's Rule 59 motion was timely, then under Rule 59(b), plaintiff's motion would have been required to be served no later than 27 May 2010. However, Rule 58 provides an additional three days for service by mail. Therefore, by adding the three days, the motion would have been due on 30 May 2010. In the year 2010, 30 May was a Sunday, and 31 May was a holiday, Memorial Day. Therefore, based on that assumption, plaintiff's Rule 59 motion was required to be served— and was served—on 1 June 2010.

Nevertheless, even assuming *arguendo* plaintiff was not entitled to the ten-day and three-day tolling periods according to Rules 58 and 59, plaintiff's Rule 59 motion was still timely. Under Rule 58, all time periods within which a party may further act pursuant to Rule 59 are tolled for ninety days during any period of noncompliance with Rule 58's service requirement. Since the trial court designated defendants as the party to draft the 7 May 2010 judgment, defendants were required to follow both Rules 58 and 59. When defendants failed to serve plaintiff with a copy of the judgment, they were not in compliance with Rules 58 and 59. Therefore, plaintiff had ninety days to file its Rule 59 motion. Plaintiff's motion, which was filed on 1 June 2010, was well within this ninety-day period. Defendants' motion to dismiss plaintiff's appeal is denied.

## B. Subject Matter Jurisdiction

[2] Plaintiff argues that the trial court lacked the requisite subject matter jurisdiction to conduct the trial after plaintiff appealed the 2 October 2009 order. We disagree.

"[T]he question of subject matter jurisdiction may be raised at any time, even in the Supreme Court." *Lemmerman v. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 85 (1986); *see also* N.C. Gen. Stat. § 8C-1, Rule 12(h)(3) (2009). Therefore, plaintiff properly raised this defense on appeal. Accordingly, the threshold question is whether the trial court properly exercised subject matter jurisdiction over the case following plaintiff's appeal of the 2 October 2009 order.

As a general rule, when an appeal is taken in a civil action, the trial court is divested of jurisdiction except to aid in certifying the correct record on appeal. *Machine Co. v. Dixon*, 260 N.C. 732, 133 S.E.2d 659 (1963). However, an attempted appeal from a nonappealable interlocutory order does not divest the trial court of jurisdiction. *Wheeler v. Thabit*, 261 N.C. 479, 481, 135 S.E.2d 10, 12 (1964). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Panos v. Timco Engine Ctr., Inc.*, —— N.C. App. ——, ——, 677 S.E.2d 868, 872 (2009) (internal citations and quotation marks omitted). "There is generally no right to appeal an interlocutory order." *N.C. Dept. of Transp. v. Page*, 119 N.C. App. 730, 733, 460 S.E.2d 332, 334 (1995).

> An interlocutory order may be immediately appealed in only two circumstances: (1) when the trial court, pursuant to N.C.R. Civ. P. 54(b), enters a final judgment as to one or more but fewer than all of the claims or parties and certifies that there is no just reason to delay the appeal; or (2) when the order deprives the appellant of a substantial right that would be lost absent appellate review prior to a final determination on the merits.

*High Rock Lake Partners, LLC v. N.C. Dept. of Transp.*, —— N.C. App. ——, ——, 693 S.E.2d 361, 366 (2010). If further action is required by the trial court to determine all of the parties' claims against each other, an order is interlocutory. *Industries, Inc. v. Insurance Co.*, 296 N.C. 486, 491, 251 S.E.2d 443, 447 (1979). "A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677

(1993). "Such a prohibition promotes judicial economy by preventing fragmentary appeals." *Id.*

In the instant case, the trial court granted defendants' motion for summary judgment for plaintiff's claim of UDP in the 2 October 2009 order. In the same order, the trial court also granted plaintiff's motion for partial summary judgment on its breach of contract claim and ordered defendants to return the $100,000.00 deposit. The trial court held open for further adjudication the issue of whether plaintiff was or may have been entitled to damages as a result of defendants' breach of contract.

The trial court did not enter the 2 October 2009 partial summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) or certify that there was no just reason to delay the appeal. Furthermore, plaintiff would not be deprived of a substantial right absent appellate review prior to a final determination on the merits. Plaintiff initially appealed the 2 October 2009 order to this Court, and the case was docketed as *COA10-660.* On 9 July 2010, we granted *defendants' motion to dismiss* the appeal, ruling that it should be dismissed "without prejudice to the parties' right to appeal from the final judgment entered 7 May 2010." At the time plaintiff appealed the 2 October 2009 order, the issue of damages regarding plaintiff's breach of contract claim against defendants was pending before the trial court. Therefore, the 2 October 2009 order was a nonappealable interlocutory order because it did not completely dispose of the case and further action was required by the trial court to finally adjudicate the parties' claims against each other. As a result, the trial court was not divested of jurisdiction to conduct the trial, and plaintiff's issue on appeal is overruled.

### III. SUMMARY JUDGMENT

[3] Plaintiff argues that the trial court erred by granting defendants' motion for partial summary judgment on plaintiff's claim for UDP. We disagree.

#### A. Standard of Review

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *One Beacon Ins. Co. v. United Mech. Corp.,* —— N.C. App. ——, ——, 700 S.E.2d 121, 122 (2010) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009)). "When considering a motion for summary judg-

ment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted). "We review a trial court's order granting or denying summary judgment *de novo*. 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

We first note that on 27 April 2010, the jury returned a verdict finding that plaintiff was not entitled to any additional damages from defendants on its breach of contract claim. Based on the record before this Court, there are no further actions required by the trial court to determine the parties' claims against each other. The jury verdict was a final determination as to damages. Therefore, at that point, the trial court's order granting defendants' motion for partial summary judgment became an appealable order.

### B. Unfair and Deceptive Practices

The elements of a claim for unfair or deceptive [] practices in violation of N.C. Gen. Stat. § 75-1.1 (2003) are: (1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately causes actual injury to the plaintiff or to his business. To prevail on a Chapter 75 claim, a plaintiff need not show fraud, bad faith, or actual deception. Instead, it is sufficient if a plaintiff shows that a defendant's acts possessed the tendency or capacity to mislead or created the likelihood of deception. Although it is a question of fact whether the defendant performed the alleged acts, it is a question of law whether those facts constitute an unfair or deceptive [] practice.

*RD&J Properties v. Lauralea-Dilton Enterprises, LLC*, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500-01 (2004) (internal citations omitted).

The parties dispute whether the contract for the boat affected commerce. The sale of a boat from a business engaged in the business of making and selling boats to another business engaged in a charter-for-hire sport fishing business is a "sale of goods" as defined by Chapter 25, Article 2, of our General Statutes ("the U.C.C."). *See generally* N.C. Gen. Stat. § 25-2-101 (2009) *et seq.* "Chapter 75 is applicable to commercial transactions which are also regulated by the U.C.C." *United Virginia Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 320, 339

S.E.2d 90, 93 (1986). Therefore, the sale of a boat by those engaged in the business of selling boats affects commerce. *See, e.g., Rosenthal v. Perkins*, 42 N.C. App. 449, 454, 257 S.E.2d 63, 67 (1979) (sale of residential housing by those engaged in business of selling real estate is trade or commerce within the meaning of N.C. Gen. Stat. § 75-1.1.).

"Under [N.C. Gen. Stat. §] 75-1.1, an act or practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act or practice is deceptive if it has the capacity or tendency to deceive." *Ace Chemical Corp. v. DSI Transports, Inc.*, 115 N.C. App. 237, 247, 446 S.E.2d 100, 106 (1994) (internal citations and quotations omitted). "Under section 75-1.1, a mere breach of contract does not constitute an unfair or deceptive act. Egregious or aggravating circumstances must be alleged before the provisions of the Act may take effect." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 794, 561 S.E.2d 905, 910-11 (2002) (citing *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992), and *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989)). *See also Watson Elec. Constr. Co. v. Summit Cos.*, 160 N.C. App. 647, 657, 587 S.E.2d 87, 95 (2003) ("[I]t is well recognized . . . that actions for unfair or deceptive [] practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [N.C. Gen. Stat.] § 75-1.1.") (citation and quotation omitted).

In the companion case to the instant case, —— N.C. App. ——, —— S.E.2d —— (2011) (COA 10-882), we affirmed the portion of the 2009 order granting plaintiff's motion for partial summary judgment regarding its claim for breach of contract. In the 2009 order, the trial court granted plaintiff's motion because defendants offered to refund plaintiff's $100,000.00 deposit on the condition that plaintiff release any claims against defendants. Plaintiff argues that defendants committed an unfair and deceptive practice when they retained the deposit after plaintiff refused to release its claims against defendants, and cites *Poor v. Hill*, 138 N.C. App. 19, 530 S.E.2d 838 (2000), to support its argument.

In *Poor*, the defendant real estate developer entered into contracts to sell three tracts of land to the plaintiffs, who paid the defendant earnest money for each lot. *Id.* at 22, 530 S.E.2d at 841. The contracts were conditioned upon, *inter alia*, the developer acquiring an "unclouded deed" from the property owner for each lot, and specified a closing date of 1 May 1994. *Id.* On 22 September 1994, the defendant sent a letter to the plaintiffs stating that the property owner "was pre-

pared to issue the deeds." *Id.* at 23, 530 S.E.2d at 841. However, the defendant also declared the plaintiffs in "default" for failing to close on 1 May 1994. *Id.* at 23, 530 S.E.2d at 841-42. The defendant claimed that he suffered damages since the lots were taken off the market, stated that the lots were re-listed at higher prices, and told the plaintiffs they could purchase the lots at the increased prices. *Id.* at 23, 530 S.E.2d at 842. However, unbeknownst to the plaintiffs, the defendant had already entered into a contract to sell one lot to a third party before he sent the 22 September 1994 letter. *Id.* at 24, 530 S.E.2d at 842.

Our Court stated, "Mr. Hill's 22 September 1994 letter to plaintiffs had the capacity to mislead and was therefore deceptive for Chapter 75 purposes" because "[e]ven though Mr. Hill indicated therein that plaintiffs might purchase all three lots if they assented to an increased purchase price, the jury's finding established that at least one lot had become subject to an unrelated contract to purchase by the date of the letter." *Id.* at 29, 530 S.E.2d at 845 (internal citation omitted). However, our Court did not hold that retention of the plaintiffs' earnest money alone was an "egregious or aggravating circumstance" sufficient to sustain a claim for UDP. Instead, the Poor Court held that the combination of the defendant's letter, the increased sale prices, and the defendant's contract to sell with a third party "as well as" his retention of the plaintiffs' earnest money were "aggravating circumstances" necessary to sustain an action for UDP against the defendant. *Id.*

In the instant case, unlike the defendant in *Poor*, defendants never increased the sale price of the boat after they entered into the contract with plaintiff. Furthermore, defendants never represented to plaintiff that the boat was available for sale after entering into a contract to sell it to Schultz. Therefore, while the facts in the instant case clearly support plaintiff's claim for breach of contract, they are not sufficiently "egregious or aggravating" to support a claim for UDP. Therefore, there was no genuine issue of material fact as to whether defendants engaged in an unfair or deceptive act, and defendants were entitled to judgment as a matter of law. The trial court properly granted defendants' motion for summary judgment on plaintiff's claim for UDP.

## IV. NEW TRIAL

[4] Plaintiff argues that the trial court abused its discretion in denying plaintiff's motion for a new trial "given the manifest disregard by the jury of the instructions of the trial court." More specifically, plaintiff

argues that the jury erred when it "disregarded the evidence" and awarded plaintiff no damages. We disagree.

> This Court applies an abuse of discretion standard of review when reviewing the denial of a motion for new trial. *Garrison v. Garrison*, 87 N.C. App. 591, 594, 361 S.E.2d 921, 923 (1987). A trial court's discretionary decision to deny or grant a new trial may be reversed on appeal "only when the record affirmatively demonstrates a manifest abuse of discretion." *Id.* This Court must determine whether the verdict represents an injustice and is against the greater weight of the evidence. *See In re Will of Buck*, 350 N.C. 621, 516 S.E.2d 858 (1999). Because "the trial court has directly observed the evidence as it was presented and the attendant circumstances, as well as the demeanor and characteristics of the witnesses," a trial court's ruling on a motion for new trial is given great deference. *Id.* at 628, 516 S.E.2d at 863.

*Kummer v. Lowry*, 165 N.C. App. 261, 263, 598 S.E.2d 223, 225 (2004). " 'When rulings are committed to the sound discretion of the trial court[,] they will be accorded great deference and will not be set aside unless it can be shown that they were arbitrary. and not the result of a reasoned decision.' " *Overton v. Purvis*, 162 N.C. App. 241, 245, 591 S.E.2d 18, 22 (2004) (quoting *Albritton v. Albritton*, 109 N.C. App. 36, 42, 426 S.E.2d 80, 84 (1993)).

Where the seller of goods fails to make delivery or repudiates, the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid, recover damages for nondelivery as provided in N.C. Gen. Stat. § 25-2-713 (2009). N.C. Gen. Stat. § 25-2-711 (2009). N.C. Gen. Stat. § 25-2-713 provides:

   (1) Subject to the provisions of this article with respect to proof of market price (G.S. 25-2-723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article (G.S. 25-2-715), but less expenses saved in consequence of the seller's breach.

   (2) Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival.

N.C. Gen. Stat. § 25-2-713 (2009).

**D.G. II, LLC v. NIX**

[213 N.C. App. 220 (2011)]

Generally, " '[o]nce a cause of action is established, plaintiff is entitled to recover, as a matter of law, nominal damages, *which in turn support an award of punitive damages.*' " *Hawkins v. Hawkins*, 331 N.C. 743, 745, 417 S.E.2d 447, 449 (1992) (quoting *Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474 (1991)) (emphasis added). "[T]he general rule is that the failure to award nominal damages is not alone ground for reversal of a judgment or for a new trial[.]" *Sweet v. Johnson*, 169 Cal. App. 2d 630, 633, 337 P.2d 499, 501 (1959). " 'It is generally recognized that an appellate court will not reverse a judgment merely for the purpose of permitting the recovery of nominal damages.' " *Henson v. Prue*, 810 A.2d 912, 915 (D.C. App. 2002) (quoting 1 Matthew Bender, Damages in Tort Actions § 2.40, at 2.49 (2002)). "It is well settled that a failure to award nominal damages is not a sufficient basis for a reversal." *Reese v. Haywood*, 235 Ark. 442, 360 S.W.2d 488 (1962), *overruled on other grounds by United Ins. Co. of Am. v. Murphy*, 331 Ark. 364, 961 S.W.2d 752 (1998); *accord, Lee v. Bergesen*, 58 Wn.2d 462, 364 P.2d 18, 21 (1961).

> While nominal damages are awarded without proof of actual injury, they imply the smallest appreciable quantity . . ., with one dollar being the amount frequently awarded. The law, however, does not concern itself with trifles (*de minimis non curat lex*), and a judgment for plaintiff will not be reversed on appeal for a failure to award nominal damages, even though plaintiff is entitled to recover nominal damages as a matter of law.

*Kraisinger v. Liggett*, 3 Kan. App. 2d 235, 238, 592 P.2d 477, 480 (1979). In addition, an action for breach of contract sounding in damages is an action at law, and the costs are taxable under N.C. Gen. Stat. § 6-1. *Cotton Mills v. Knitting Co.*, 194 N.C. 80, 138 S.E. 428 (1927).

In *McLean v. Mechanic*, the plaintiff filed an action against the defendant for criminal conversation. 116 N.C. App. 271, 275, 447 S.E.2d 459, 461 (1994). The trial court instructed the jury that if it found that the defendant committed criminal conversation with the plaintiff's wife, the jury could award the plaintiff nominal or compensatory damages. *Id.* The trial court further instructed on punitive damages and defined each type of damages for the jury. *Id.*

> The jury returned a verdict (1) finding that defendant committed criminal conversation with [the plaintiff's wife]; (2) awarding zero compensatory or nominal damages; and (3) awarding $10,000.00 in punitive damages. The trial court set aside the puni-

tive damages award based on a finding that no punitive damages could be awarded where the jury determined the plaintiff was not entitled to compensatory or nominal damages despite having been instructed as to those damages.

*Id.* This Court reversed, holding that since the plaintiff proved all of the elements of his case, he was entitled to nominal damages. *Id.* at 276, 447 S.E.2d at 461. We further held that the jury erred by failing to follow the trial court's instructions to award the plaintiff nominal damages, and that the nominal damages supported the jury's award of punitive damages. *Id.* at 276, 447 S.E.2d at 462.

In the instant case, the only issue at trial was the amount of damages, in addition to the deposit, that plaintiff was entitled to recover from defendants. The jury heard testimony from Nix, who stated that the appraised value of the boat was $1,600,000.00, which was $250,000.00 more than the price stated in defendants' contract with plaintiff. Plaintiff also introduced into evidence a marine survey appraisal prepared by David Jones ("Jones"). Jones also stated that the value of the boat was $1,600,000.00.

Following the presentation of evidence, the trial court instructed the jury that it could "believe all, part or none of what any witness has said . . . ." The trial court also instructed the jury that it was "the sole judge" of the weight of the evidence and of the credibility of the witnesses. The trial court then instructed the jury on actual damages as follows:

> Now the plaintiff may be entitled to recover actual damages in addition to technical damages. On this issue the burden of proof is on the plaintiff, D.G. II. That means that the plaintiff must prove to you by the greater weight of the evidence the amount of actual damages sustained as a result of the breach of the contract for failure to deliver the boat. Now a buyer may recover damages for the seller's failure to make delivery. To determine such damages you much first find the fair market price of the boat at the place where delivery was to have occurred and at the time the plaintiff learned of defendant's failure to make delivery. From that market price you must subtract the party's contract price. The difference is the plaintiff's damages for the defendant's failure to make delivery.

> Now ladies and gentlemen, the fair market value of a property may be defined as the price which a willing buyer would pay to purchase the asset on the open market from a willing seller with neither party being under any compulsion to complete the transaction.

**D.G. II, LLC v. NIX**

[213 N.C. App. 220 (2011)]

The trial court then instructed the jury that if it failed to find by the greater weight of the evidence that plaintiff suffered actual damages, then "it would be your duty to write a nominal amount such as one dollar . . . ."

The jury, as trier of fact, was entitled to weigh the evidence, and evidently discounted the testimony of Nix and Jones regarding the market value of the boat. The jury determined that the fair market value of the boat was equal to the contract price, *i.e.*, $1,350,000.00, because the jury returned a verdict finding that plaintiff was not entitled to any additional damages. However, the jury failed to follow the trial court's instructions to "write a nominal amount" in its verdict after declining to award plaintiff actual damages. Therefore, the jury erred by failing to follow the trial court's instructions. Nevertheless, unlike the plaintiff in McLean, an award of nominal damages to plaintiff in the instant case would not support an award of other relief, such as punitive damages.

In the October 2009 order, in the instant case, the trial court granted plaintiff's motion for partial summary judgment on its breach of contract claim against defendants. In the November 2009 order, the trial court awarded plaintiff damages against defendants, jointly and severally, in the amount of $100,000.00, with interest. Additionally, the trial court ordered, in its 7 May 2010 judgment, that plaintiff take nothing in addition to the November 2009 order, and also ordered "that all costs of court shall be taxed, jointly and severally, against defendants . . . ."

When the trial court entered the October 2009 order, which granted plaintiff's motion for partial summary judgment on its breach of contract claim, plaintiff was entitled to recover nominal damages as a matter of law. However, the October 2009 order itself, not plaintiff's right to recover nominal damages, supported the trial court's 7 May 2010 judgment awarding costs because once the trial court granted plaintiff's motion for partial summary judgment for breach of contract, plaintiff was entitled to court costs under N.C. Gen. Stat. § 6-1 (2009). *See Cotton Mills v. Knitting Co.*, 194 N.C. 80, 138 S.E. 428 (1927). Therefore, although the jury failed to award plaintiff nominal damages, it is not necessary to reverse the verdict or require a new trial. *See Sweet*, 169 Cal. App. 2d at 633, 337 P.2d at 501.

Theoretically, we could remand the case to the trial court with directions to award [plaintiff] nominal damages. Such a remand would, however, be symbolic only, and where "nominal damages

only could be allowed . . . the failure to award such damages . . . is not a ground for reversal."

*Henson*, 810 A.2d at 916 (quoting *Lee v. Dunbar*, 37 A.2d 178, 180 (D.C. 1944)). Plaintiff's issue on appeal is overruled.

## V. CONCLUSION

Defendants' motion to dismiss plaintiff's appeal is denied. The trial court's orders granting defendants' motion for partial summary judgment on plaintiff's claim for UDP, denying plaintiff additional damages against defendants, and denying plaintiff's motion for a new trial are affirmed.

Affirmed.

Judges ERVIN and THIGPEN concur.