IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1046

 Filed: 18 August 2020

Wake County, No. 15 CVD 16510

SRINIVAS JONNA, Plaintiff,

 v.

SUDHA YARAMADA, Defendant.

 Appeal by plaintiff from orders entered 31 March 2017, 20 November 2017,

and 8 December 2017 by Judge Lori Christian in Wake County District Court. Appeal

by defendant by writ of certiorari from order entered 20 November 2017 by Judge

Lori Christian in Wake County District Court. Heard in the Court of Appeals 6

February 2020.

 Plaintiff-appellant Srinivas Jonna, pro se.

 Blanco Tackabery & Matamoros, P.A., by Chad A. Archer, for defendant-
 appellee.

 Young Moore and Henderson, P.A., by Angela Farag Craddock, court-appointed
 amicus curiae.

 ZACHARY, Judge.

 Plaintiff-Appellant Srinivas Jonna (“Plaintiff-Father”) appeals from several

orders entered in the parties’ domestic matter. He argues that the trial court erred

by (1) incorrectly calculating his child support obligation; (2) denying his motions for

a new trial; (3) sanctioning him under Rule 11 of the North Carolina Rules of Civil

Procedure; and (4) granting Defendant-Mother primary physical custody of their
 JONNA V. YARAMADA

 Opinion of the Court

minor child. Defendant-Appellee Sudha Yaramada (“Defendant-Mother”) petitions

this Court to issue a writ of certiorari so that we may review whether the trial court

correctly applied the North Carolina Child Support Guidelines (the “Guidelines”).

 For the reasons that follow, we vacate the 20 November 2017 child support

order and remand for further proceedings. We reverse that part of the trial court’s 8

December 2017 order imposing sanctions on Plaintiff-Father. The 31 March 2017

custody order and that part of the 8 December 2017 order denying Plaintiff-Father’s

Rule 59 motions are affirmed.

 I. Background

 The parties are Indian citizens and residents of Wake County, and the parents

of one child, who was born in 2013. They were married in 2009, and separated in

December 2015.

 On 10 December 2015, Plaintiff-Father filed an “Ex Parte Complaint/Motion

for Temporary Custody and Injunctive Relief.” In support of his request for an ex parte

order for custody, he alleged that

 Plaintiff[-Father] and Defendant[-Mother] agreed to
 separate for several days after [Defendant-Mother]
 attempted to strike [Plaintiff-Father] . . . . That
 [Defendant-Mother] has over the last year of the marriage
 exhibited irrational behavior to include; an attempted
 suicide, threats to “kill” [Plaintiff-Father], [Defendant-
 Mother] has force[ ] fed the minor child to the point of
 vomiting, continues to display bouts of anger and has
 threatened to leave the country and return to India with

 -2-
 JONNA V. YARAMADA

 Opinion of the Court

 the minor child against [Plaintiff-Father’s] wishes and in
 direct derogation of his parental rights.

 Plaintiff-Father sought “an immediate Protective Order granting [him] the

temporary exclusive care, custody and control of the minor child,” together with an

injunction prohibiting Defendant-Mother from having any contact with him or the

child. That day, the trial court entered a protective order, but declined to grant

Plaintiff-Father the relief he sought, instead restraining both parties from removing

the child from the State of North Carolina.

 On 16 December 2015, the parties executed a Memorandum of

Judgment/Order, which the trial court entered. The order provided, inter alia, that

Defendant-Mother would have primary physical custody of the minor child, Plaintiff-

Father would have secondary physical custody, and the parties would share legal

custody, pending a full hearing on the matter. The parties agreed to alternate actual

physical custody of the minor child on a weekly basis.

 On 16 February 2016, Defendant-Mother filed an answer and counterclaim

seeking temporary and permanent legal and physical custody of the parties’ minor

child. On 1 September 2016, the trial court entered a consent order executed by the

parties, allowing Plaintiff-Father to care for the minor child while Defendant-Mother

traveled to India, and providing that Defendant-Mother could exercise “make up”

time with the child upon her return, with the regular custodial arrangement then

resuming.

 -3-
 JONNA V. YARAMADA

 Opinion of the Court

 On 26 January 2017, the custody case came on for hearing. Both the parties

were represented by counsel and presented evidence.

 Defendant-Mother testified that Plaintiff-Father’s allegations in his ex parte

complaint/motion for temporary custody and injunctive relief concerning her mental

instability and other issues were baseless. She also testified that she lives in a three-

bedroom apartment with a roommate and that the minor child had his own room

when he stayed with her, whereas Plaintiff-Father’s home was not suitable for the

minor child. In addition, Defendant-Mother offered into evidence police reports of an

incident of domestic violence and photographs of the injuries she sustained when

Plaintiff-Father assaulted Defendant-Mother. According to Defendant-Mother,

Plaintiff-Father would become aggressive at times, and “punch the walls and doors”

when he lost his temper, as well as assault her.

 Defendant-Mother also testified that Plaintiff-Father has a “controlling

attitude.” For example, in 2015, Defendant-Mother and the minor child visited India,

and the child was scheduled to visit India with Plaintiff-Father immediately

afterward. Because each flight from the United States to India takes 22 to 30 hours,

and the minor child was an infant, Defendant-Mother tried to arrange for the minor

child to stay in India for three days with his paternal grandparents until Plaintiff-

Father arrived. Plaintiff-Father refused, insisting that the minor child return to the

United States with Defendant-Mother, only to return to India with him 72 hours

 -4-
 JONNA V. YARAMADA

 Opinion of the Court

later. Defendant-Mother explained that Plaintiff-Father “wants to have his way or no

way.”

 The parties also disagreed on whether to have the minor child attend daycare.

Defendant-Mother thought it was in the child’s best interest; Plaintiff-Father wanted

the child to be cared for by his parents, who live with him in his home.

 Despite his allegations, Plaintiff-Father repeatedly stated at trial that the

current shared custody arrangement was working well. He testified that his parents

care for the minor child while he works, as well as when he plays cricket. Plaintiff-

Father also testified about an ongoing legal issue in India between him and

Defendant-Mother, in which he did not want the minor child involved, but said that

he did not have any objection to either parent traveling with the minor child. When

asked what action he wanted the trial court to take with regard to custody of the

minor child, Plaintiff-Father stated, “I think the current arrangement [alternating

weeks] is working very well, and we both communicate well about the child.”

 At the conclusion of the hearing, the trial court announced that “physical

custody primarily is going to be with [Defendant-Mother]. [Plaintiff-Father] is going

to have the child every other week from Thursday night to Monday night.” In

addition, the trial court stated that the child would continue to attend daycare.

 Although Plaintiff-Father was represented by counsel, on 6 February 2017, he

filed a pro se “Motion to Open Evidence” prior to the trial court’s entry of the child

 -5-
 JONNA V. YARAMADA

 Opinion of the Court

custody order. In response, on 15 February 2017, Defendant-Mother filed a “Motion

for Rule 11 Sanctions.” On 22 March 2017, counsel for Plaintiff-Father withdrew from

the case.

 By order entered 31 March 2017, the trial court concluded that it would be in

the best interest of the child for the parties to share legal custody, with Defendant-

Mother having primary physical custody and Plaintiff-Father having secondary

physical custody. As relevant to this appeal, the order provided that: (1) “[t]he minor

child shall stay in daycare until he starts school for at least a half day, each weekday”;

(2) “either parent may take the minor child to India for up to five consecutive weeks

each year until he is in school”; (3) after the child starts school, “either parent may

take the minor child to India for up to five consecutive weeks each year during

summer break . . . or up to two consecutive weeks at any time during the year”; and

(4) “[i]f a parent cho[o]ses not to travel to India with the child, he or she shall have

two uninterrupted weeks’ vacation within the United States” with the minor child.

 On 11 April 2017, Defendant-Mother filed a motion for prospective and

retroactive “child support consistent with the North Carolina Child Support

Guidelines.”

 Through new counsel,1 Plaintiff-Father filed a Rule 59 motion, and on 22 May

2017, Plaintiff-Father filed his “Amended Motion in the Cause” pursuant to Rule 59,

 1 It is unclear from the record when Plaintiff-Father retained another attorney in the matter.

 -6-
 JONNA V. YARAMADA

 Opinion of the Court

seeking a new trial on the grounds of irregularity at trial, fraud, surprise, and newly

discovered evidence. On 9 June 2017, Defendant-Mother responded to Plaintiff-

Father’s amended Rule 59 motion with her motion for Rule 11 sanctions and a motion

to dismiss.

 A hearing was held on 13 June 2017, at which the trial court addressed

Plaintiff-Father’s amended Rule 59 motion for a new trial and Defendant-Mother’s

motion for sanctions. After hearing the arguments of counsel, the trial court stated,

“I don’t find any grounds under Rule 59; quite frankly, I find that this is frivolous,

and I am going to find that pursuant to Rule 11, [Plaintiff-Father] is going to pay the

attorney’s fees for [Defendant-Mother].”

 On 25 July 2017, the trial court held the child support hearing. Plaintiff-Father

proceeded pro se, and Defendant-Mother was represented by counsel. On 20

November 2017, the trial court entered its child support order, requiring, inter alia,

that Plaintiff-Father (1) contribute $680.39 per month to the support of the parties’

minor child beginning 1 August 2015; (2) pay arrearages of $5,539.18 to Defendant-

Mother at the rate of $230.80 per month; and (3) pay 45% of the minor child’s

uninsured health care expenses. The trial court also ordered that the parties

exchange copies of their W-2s and other evidence of their income annually.

 By order entered 8 December 2017, the trial court denied Plaintiff-Father’s

motion for a new trial and imposed sanctions on him. The trial court found that

 -7-
 JONNA V. YARAMADA

 Opinion of the Court

Plaintiff-Father “ha[d] not forecast[ ] evidence that would change” its prior custody

ruling, and that “[t]here [wa]s no basis for the Rule 59 motion filed by Plaintiff[-

Father].”

 On 15 December 2017, Plaintiff-Father filed notice of appeal to this Court. On

appeal, Plaintiff-Father challenges certain aspects of the child support order, the

order denying his motion for a new trial and imposing sanctions, and the child custody

order. On 25 November 2019, Defendant-Mother petitioned this Court to issue a writ

of certiorari, in order to review the child support order. We address each issue in turn.

 II. Child Support Order

 A. Standard of Review

 “Child support orders entered by a trial court are accorded substantial

deference by appellate courts and our review is limited to a determination of whether

there was a clear abuse of discretion.” Mason v. Erwin, 157 N.C. App. 284, 287, 579

S.E.2d 120, 122 (2003) (citation omitted). “Under this standard of review, the trial

court’s ruling will be upset only upon a showing that it was so arbitrary that it could

not have been the result of a reasoned decision.” Biggs v. Greer, 136 N.C. App. 294,

296-97, 524 S.E.2d 577, 581 (2000) (citation omitted). “Where a party asserts an error

of law occurred, we apply a de novo standard of review.” State ex rel. Lively v. Berry,

187 N.C. App. 459, 462, 653 S.E.2d 192, 194 (2007) (italics omitted).

 B. Child Support Obligation

 -8-
 JONNA V. YARAMADA

 Opinion of the Court

 Plaintiff-Father first argues that the trial court erred in calculating his

retroactive child support obligation, and in ordering the parties to exchange financial

information annually.

 1. Use of the Guidelines

 Plaintiff-Father contends that the “[t]rial court erred as a matter of law by

using the Child Support Guidelines Worksheet to calculate the Retroactive Child

support from December 2015 to April 11, 2017.” We disagree.

 Child support awarded for that period of time prior to the date on which a party

files a complaint or motion for child support “is properly classified as retroactive child

support.” Respess v. Respess, 232 N.C. App. 611, 628, 754 S.E.2d 691, 702 (2014)

(citation omitted). Effective 1 January 2015, the Guidelines specifically authorize

trial courts to use the Guidelines for calculating a retroactive child support obligation:

 In a direct response to Respess v. Respess, 232 N.C. App.
 611, 754 S.E.2d 691 (2014), the 2014 General Assembly
 amended G.S. 50-13.4(c1) to provide that the Conference of
 Chief District Judges shall prescribe uniform statewide
 presumptive guidelines for the computation of child
 support obligations, including retroactive support
 obligations[.]

 In cases involving a parent’s obligation to support his or
 her child for a period before a child support action was filed
 (i.e., cases involving claims for “retroactive child support”
 or “prior maintenance”), a court may determine the amount
 of the parent’s obligation (a) by determining the amount of
 support that would have been required had the guidelines
 been applied at the beginning of the time period for which

 -9-
 JONNA V. YARAMADA

 Opinion of the Court

 support is being sought, or (b) based on the parent’s fair
 share of actual expenditures for the child’s care.

Guidelines, Ann. R. 2 (emphasis added) (revised 1 January 2015 and left unchanged

as of 2019); see also N.C. Gen. Stat. § 50-13.4(c1) (“Effective July 1, 1990, the

Conference of Chief District Judges shall prescribe uniform statewide presumptive

guidelines for the computation of child support obligations, including retroactive

support obligations, of each parent as provided in Chapter 50 or elsewhere in the

General Statutes . . . .” (emphasis added)).

 Thus, Plaintiff-Father’s assertion that the trial court erred by utilizing the

Guidelines to calculate his retroactive child support obligation is meritless.

 2. Finding of Fact 9: Health Insurance Expense

 Plaintiff-Father also specifically challenges finding of fact 9, which provides,

in pertinent part: “For the period December[ ] 2015 to January 2017 . . . [Plaintiff-

Father] incurred an average of $156 per month for [health insurance coverage]

expense[ ] for the minor child.” Plaintiff-Father argues that “[t]here is no competent

evidence to support [the] [t]rial court’s finding,” and that “there is uncontroverted

evidence” in the record that he paid $220 per month in 2015, and $231 per month in

2016, and $156 per month in 2017 to maintain health insurance coverage for the

minor child. We agree.

 At the child support hearing, Plaintiff-Father testified as follows:

 - 10 -
 JONNA V. YARAMADA

 Opinion of the Court

 THE COURT: How much are you paying for your child’s
 day -- healthcare?

 [Plaintiff-Father]: In the last three years, it’s been
 fluctuating, Your Honor, so I request that average be
 considered. So in 2015, I was paying $231; in 2016, I was
 paying $220; and this year I’ve been paying $156.

 THE COURT: It’s going down?

 [Plaintiff-Father]: It’s strange, it actually went down this -
 - and that’s why I said it’s fluctuating; it may go up next
 year, I don’t know.

 THE COURT: It’s 156 a month --

 [Plaintiff-Father]: $156 --

 THE COURT: -- or per pay period?

 ....

 [Plaintiff-Father]: I think it’s per month. And that’s why
 I’m pretty sure it will go up next year.

 In addition, Plaintiff-Father presented the trial court with written verification

of the 2015 and 2016 cost of maintaining health insurance coverage for the minor

child. Thus, the trial court’s finding in this regard was not supported by competent

evidence.

 Accordingly, we remand the child support order to the trial court for

appropriate findings of fact and a recalculation of Plaintiff-Father’s retroactive child

support obligation, in which he is given proper credit for the expense of providing

health insurance coverage for the minor child.

 - 11 -
 JONNA V. YARAMADA

 Opinion of the Court

 3. Work-Related Child Care Costs

 Plaintiff-Father next maintains that it was not “reasonably necessary” for

Defendant-Mother to send the child to daycare during the period prior to February

2017, and that the trial court erred by including this expense in the calculation of his

retroactive child support obligation. We disagree.

 The Guidelines provide that “[r]easonable child care costs that are . . . paid by

a parent due to employment . . . are added to the basic child support obligation and

prorated between the parents based on their respective incomes.” Guidelines, Ann. R.

4. Moreover, “[w]hen the court does not deviate from the Guidelines, an order for child

support in an amount determined pursuant to the Guidelines is conclusively

presumed to meet the reasonable needs of a child . . . and specific findings regarding

a child’s reasonable needs . . . are therefore not required.” Guidelines, Ann. R. 1.

 Here, the minor child’s attendance at daycare was a point of contention at trial.

Defendant-Mother asserted that the child benefited from attendance, while Plaintiff-

Father claimed that the expense was unnecessary when his parents were willing and

able to care for the child free of charge. However, it was undisputed that both parents

were employed and that Defendant-Mother incurred the child care cost due to her

employment, and Plaintiff-Father did not request that the trial court deviate from

the Guidelines.

 - 12 -
 JONNA V. YARAMADA

 Opinion of the Court

 The trial court found in its child support order that since the date of separation,

both parents have been employed, and that “[f]or the period December[ ] 2015 to

January 2017 . . . the parties shared equal custodial time. Furthermore, during this

period . . . Defendant[-Mother] incurred an average of $700 per month for work-

related day care expenses for the minor child[.]” Father has not raised any challenge

to these findings of fact on appeal.

 Having found that Defendant-Mother incurred child care costs due to her

employment, the trial court properly included this work-related child care expense in

the calculation of Plaintiff-Father’s child support obligation. As explicitly provided in

the Guidelines, when the child support obligation is calculated in accordance with the

Guidelines, “specific findings regarding a child’s reasonable needs . . . are . . . not

required.” Guidelines, Ann. R. 1. Thus, in light of the trial court’s other findings, it

was not required to make a specific finding of fact that the work-related child care

expense was necessary.

 Accordingly, the trial court did not abuse its discretion by including Defendant-

Mother’s work-related child care expense in its retroactive child support calculation.

This argument is overruled.

 C. Exchange of W-2 Forms

 - 13 -
 JONNA V. YARAMADA

 Opinion of the Court

 Lastly, Plaintiff-Father maintains that the trial court “exceeded its authority

in ordering the [p]arties to exchange their W[-]2s every year.” This argument is

without merit.

 First, Plaintiff-Father fails to furnish this Court with a legitimate argument

as to why this portion of the order exceeded the trial court’s authority. Nor does he

set forth any argument as to why this constitutes an abuse of the trial court’s

discretion. It was Plaintiff-Father’s duty “to challenge findings and conclusions, and

make corresponding arguments on appeal. It is not the job of this Court to create an

appeal for Plaintiff-[Father], [or] to supplement an appellant’s brief with legal

authority or arguments not contained therein.” Lasecki v. Lasecki, 257 N.C. App. 24,

47, 809 S.E.2d 296, 312 (2017) (citations and internal quotation marks omitted).

Thus, this argument is abandoned.

 In addition, ordering the parties to a child support action to exchange financial

information annually is well within the inherent authority of the court to administer

justice. The Guidelines “are based on the ‘income shares’ model[.]” Guidelines, Ann.

R. 2. “The income shares model is based on the concept that child support is a shared

parental obligation and that a child should receive the same proportion of parental

income he or she would have received if the child’s parents lived together.” Guidelines,

Ann. R. 2. Because it is necessary to have the parties’ financial information in order

to determine the parental support obligation, it is not uncommon for North Carolina

 - 14 -
 JONNA V. YARAMADA

 Opinion of the Court

courts to order that parties periodically exchange financial information. Plaintiff-

Father’s argument lacks merit.

 D. Summary

 The trial court erred in calculating Plaintiff-Father’s retroactive child support

obligation. Accordingly, we vacate the 20 November 2017 child support order, and

remand to the trial court for additional findings of fact regarding the cost of health

insurance coverage for the minor child, and a recalculation of Plaintiff-Father’s

retroactive child support obligation.

 III. Rule 59(a) Motion

 In the present case, Plaintiff-Father moved the trial court for a new trial

pursuant to Rule 59(a)(1), (2), (3), and (4). On appeal, he argues that the trial court

erred in denying his motion for a new trial under Rule 59(a)(1), (3), and (4), asserting

that (1) there was an “irregularity” at trial because “[i]nadmissible and prejudicial

hearsay evidence” was used by the trial court in reaching its conclusions of law; (2)

he “and his attorney were ‘surprised’ and ‘shocked’ to hear [Defendant-Mother]

completely contradicting her statement in the Consent Order . . . and asking for sole

custody and making various false allegations” at trial; and (3) he is now in possession

of evidence to which he did not have access prior to trial. After careful review, we

conclude that the trial court’s denial of Plaintiff-Father’s Rule 59(a) motion does not

 - 15 -
 JONNA V. YARAMADA

 Opinion of the Court

“amount[ ] to a substantial miscarriage of justice.” Worthington v. Bynum, 305 N.C.

478, 487, 290 S.E.2d 599, 605 (1982).

 A. Standard of Review

 A party may move the trial court for a new trial, or to alter or amend a

judgment, under one or more of the nine grounds found in Rule 59(a). N.C. Gen. Stat.

§ 1A-1, Rule 59(a). For motions brought under Rule 59(a)(1)-(6) and (9), “a motion for

new trial is addressed to the sound discretion of the trial court, and its ruling will not

be disturbed absent a manifest abuse of that discretion.” N.C. Indus. Capital, LLC v.

Clayton, 185 N.C. App. 356, 371, 649 S.E.2d 14, 25 (2007) (citation omitted). A trial

court’s discretion regarding a motion under Rule 59 is “practically unlimited.” Pearce

v. Fletcher, 74 N.C. App. 543, 544, 328 S.E.2d 889, 890 (1985) (citation omitted).

“Consequently, an appellate court should not disturb a discretionary Rule 59 order

unless it is reasonably convinced by the cold record that the trial judge’s ruling

probably amounted to a substantial miscarriage of justice.” Worthington, 305 N.C. at

487, 290 S.E.2d at 605.

 B. Irregularity at Trial

 Plaintiff-Father argues that the admission into evidence of what he describes

as inadmissible and prejudicial hearsay amounted to an irregularity depriving him

of a fair trial.

 - 16 -
 JONNA V. YARAMADA

 Opinion of the Court

 Rule 59(a)(1) states that a new trial may be granted for “[a]ny irregularity by

which any party was prevented from having a fair trial[.]” N.C. Gen. Stat. § 1A-1,

Rule 59(a)(1). Although the language of Rule 59(a)(1) is broad, “[n]ew trials are not

awarded because of technical errors. The error must be prejudicial.” Sisk v. Sisk, 221

N.C. App. 631, 635, 729 S.E.2d 68, 71 (2012) (citation omitted), disc. review denied,

366 N.C. 571, 738 S.E.2d 368 (2013). Moreover, “[t]he party asserting the error must

demonstrate that he has been prejudiced thereby.” Id. (citation omitted).

 Here, Plaintiff-Father fails to demonstrate an error by which he was

prejudiced. Plaintiff-Father argues on appeal that he “was prejudiced from having a

fair trial by admitting these hearsay [police] reports into evidence, which misled the

[t]rial [c]ourt[.]” However, Plaintiff-Father also maintains that the “[p]olice reports

were produced to corroborate the purported domestic violence.” His contention makes

the point that because Defendant-Mother testified without objection to the domestic

violence, as well as the injuries she suffered, the admission of the police reports

cannot have prejudiced his case to the point where he could not have a fair trial.

Assuming, arguendo, that the police reports were improperly admitted, Defendant-

Mother’s testimony was itself ample substantive evidence of the acts, and thus, would

not constitute an irregularity warranting a new trial.

 In addition, Plaintiff-Father makes no argument that he was prejudiced by the

admission of the photographs. “It is not the duty of this Court to peruse . . . the record,

 - 17 -
 JONNA V. YARAMADA

 Opinion of the Court

constructing an argument for appellant.” Id. at 635, 729 S.E.2d at 72 (citation

omitted).

 This argument therefore lacks merit.

 C. Accident or Surprise

 Plaintiff-Father also claims that he is entitled to a new trial on the basis of

Rule 59(a)(3), which provides that a new trial may be granted for “[a]ccident or

surprise which ordinary prudence could not have guarded against[.]” N.C. Gen. Stat.

§ 1A-1, Rule 59(a)(3). He asserts that he was not prepared for the evidence introduced

by Defendant-Mother at trial in support of her efforts to gain primary physical

custody, as he was under the impression that the parties agreed to share joint legal

and physical custody of the parties’ child. He argues that he and “his attorney were

‘surprised’ and ‘shocked’ to hear . . . Defendant[-Mother] completely contradicting her

statement in the Consent Order . . . and asking for sole custody and making various

false allegations.”

 We note, however, that in her answer and counterclaim for child custody,

Defendant-Mother specifically alleged that it was “in the best interest of said minor

child that his care, custody and control be placed” with her, and she sought the

“primary physical and legal care, custody and control of the said minor child.” She

also testified at trial that she wanted primary legal and physical custody of the

parties’ child because she “ha[d] been the primary caregiver of the child ever since he

 - 18 -
 JONNA V. YARAMADA

 Opinion of the Court

was born.” Defendant-Mother’s agreement to share custody on a temporary basis,

pending a full hearing on custody, did not constitute a waiver of her express claim for

primary custody.

 That Defendant-Mother sought primary legal and physical custody of the

parties’ minor child at the custody trial was not “surprise which ordinary prudence

could not have guarded against[.]” Id. Plaintiff-Father is not entitled to relief on the

basis of this argument.

 D. Newly Discovered Evidence

 Finally, Plaintiff-Father argues that a new trial is warranted under Rule

59(a)(4), because he has “[e]vidence that could not be procured prior to trial.”

 Rule 59(a)(4) provides that a new trial may be granted on the grounds of

“[n]ewly discovered evidence material for the party making the motion which he could

not, with reasonable diligence, have discovered and produced at the trial[.]” Id. § 1A-

1, Rule 59(a)(4). Plaintiff-Father concedes that the evidence to which he refers was

not newly discovered after trial, but asserts that it was inaccessible prior to trial. He

maintains that it therefore “satisfie[s] the requirements of Rule 59(a)(4) for [n]ew

trial.”

 The first item addressed by Plaintiff-Father is a recording that was stored on

his computer hard drive, which he alleges would tend to show that Defendant-Mother

threatened him and the child, and that she was abusive. Plaintiff-Father does not

 - 19 -
 JONNA V. YARAMADA

 Opinion of the Court

dispute Defendant-Mother’s contention that he knew that the information was on his

computer, and simply waited until after trial to hire an expert to access that

information. Hence, the recording was not newly discovered evidence, nor was it

inaccessible.

 The second item of evidence at issue was daycare “drop off” records, which

Plaintiff-Father alleges on appeal would tend to show that he dropped the child off at

daycare 74% of the time.2 Plaintiff-Father asserts that he requested the daycare

records, but that Defendant-Mother would not allow the daycare to release the

information to him until after trial.

 Although Defendant-Mother may have told the daycare not to respond to

Plaintiff-Father’s requests for information, he does not address the fact that the

information he sought from the child’s daycare could have been obtained by subpoena

prior to trial. The daycare records were not newly discovered and were not

inaccessible, and Plaintiff-Father’s failure to subpoena the daycare records evidences

a lack of due diligence.

 It is undisputed that the evidence was not newly discovered; it is also evident

that it was not inaccessible prior to trial. See Ar-Con Constr. Co. v. Anderson, 5 N.C.

App. 12, 20, 168 S.E.2d 18, 23 (1969) (“There was no showing that appellant did not

have full knowledge of the facts referred to in its motion at the time of the hearing on

 2 He alleged in his amended Rule 59 motion that the daycare records would show that

Defendant-Mother did not have the child in daycare full-time starting in mid-December 2016.

 - 20 -
 JONNA V. YARAMADA

 Opinion of the Court

the plea in bar, and no showing as to why, in the exercise of due diligence, appellant

had failed to present evidence concerning such facts at the time of that hearing.”).

Plaintiff-Father has failed to demonstrate the existence of newly discovered material

evidence that he could not have discovered and produced at the custody hearing.

 Thus, the trial court properly denied a new trial on this ground as well.

 E. Summary

 Plaintiff-Father failed to establish that the trial court abused its discretion in

denying his Rule 59(a) motion. Accordingly, we affirm that part of the trial court’s 8

December 2017 order denying Plaintiff-Father’s Rule 59(a) motion.

 IV. Rule 11 Sanctions

 Plaintiff-Father next contends that the trial court erred in imposing Rule 11

sanctions against him for filing three post-hearing motions that he maintains were a

proper attempt to obtain appropriate post-trial relief from the custody order pursuant

to Rule 59. After careful consideration, we conclude that the trial court erred in

sanctioning Plaintiff-Father for filing these motions.

 A. Standard of Review

 Our standard of review for Rule 11 sanctions is well established: “The trial

court’s decision to impose or not to impose mandatory sanctions under . . . Rule 11(a)

is reviewable de novo as a legal issue.” Turner v. Duke Univ., 325 N.C. 152, 165, 381

S.E.2d 706, 714 (1989) (italics omitted). “[A]n appellate court must determine

 - 21 -
 JONNA V. YARAMADA

 Opinion of the Court

whether the findings of fact of the trial court are supported by sufficient evidence,

whether the conclusions of law are supported by the findings of fact, and whether the

conclusions of law support the judgment.” Johns v. Johns, 195 N.C. App. 201, 206,

672 S.E.2d 34, 38 (2009) (citation omitted). “If the appellate court makes these three

determinations in the affirmative, it must uphold the trial court’s decision to impose

or deny the imposition of mandatory sanctions under . . . Rule 11(a).” Turner, 325

N.C. at 165, 381 S.E.2d at 714.

 In reviewing a trial judge’s findings of fact, we are “strictly
 limited to determining whether the trial judge’s underlying
 findings of fact are supported by competent evidence, in
 which event they are conclusively binding on appeal, and
 whether those factual findings in turn support the judge’s
 ultimate conclusions of law.” State v. Williams, 362 N.C.
 628, 632, 669 S.E.2d 290, 294 (2008) (quoting State v.
 Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)); see
 also Sisk v. Transylvania Cmty. Hosp., Inc., 364 N.C. 172,
 179, 695 S.E.2d 429, 434 (2010) (“ ‘[F]indings of fact made
 by the trial judge are conclusive on appeal if supported by
 competent evidence, even if . . . there is evidence to the
 contrary.’ ” (quoting Tillman v. Commercial Credit Loans,
 Inc., 362 N.C. 93, 100-01, 655 S.E.2d 362, 369 (2008))).

Auto. Grp., LLC v. A-1 Auto Charlotte, LLC, 230 N.C. App. 443, 447, 750 S.E.2d 562,

566 (2013).

 B. Analysis

 Rule 11 of the North Carolina Rules of Civil Procedure provides, in pertinent

part:

 Every pleading, motion, and other paper of a party
 represented by an attorney shall be signed by at least one

 - 22 -
 JONNA V. YARAMADA

 Opinion of the Court

 attorney of record . . . . A party who is not represented by
 an attorney shall sign his pleading, motion, or other paper
 . . . . The signature of an attorney or party constitutes a
 certificate by him that he has read the pleading, motion, or
 other paper; that to the best of his knowledge, information,
 and belief formed after reasonable inquiry it is well
 grounded in fact and is warranted by existing law or a good
 faith argument for the extension, modification, or reversal
 of existing law, and that it is not interposed for any
 improper purpose, such as to harass or to cause
 unnecessary delay or needless increase in the cost of
 litigation. . . . If a pleading, motion, or other paper is signed
 in violation of this rule, the court, upon motion or upon its
 own initiative, shall impose upon the person who signed it,
 a represented party, or both, an appropriate sanction[.]

N.C. Gen. Stat. § 1A-1, Rule 11(a).

 Appellate review “of sanctions under Rule 11 consists of a three-pronged

analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose.” Auto.

Grp., 230 N.C. App. at 447, 750 S.E.2d at 566 (citation and internal quotation marks

omitted). “A violation of any one of these prongs requires the imposition of sanctions.”

Id. For each prong, the trial court must make findings of fact and conclusions of law.

McClerin v. R-M Indus., Inc., 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995).

 To assess the sufficiency of the factual basis of a pleading, this Court must

determine “(1) whether the plaintiff undertook a reasonable inquiry into the facts and

(2) whether the plaintiff, after reviewing the results of his inquiry, reasonably

believed that his position was well grounded in fact.” In re Thompson, 232 N.C. App.

224, 230, 754 S.E.2d 168, 173 (2014) (citation omitted). An appraisal of the legal

 - 23 -
 JONNA V. YARAMADA

 Opinion of the Court

sufficiency of a pleading requires that we look “first to the facial plausibility of the

pleading and only then, if the pleading is implausible under existing law, to the issue

of whether to the best of the signer’s knowledge, information, and belief formed after

reasonable inquiry, the complaint was warranted by the existing law.” Bryson v.

Sullivan, 330 N.C. 644, 661, 412 S.E.2d 327, 336 (1992) (citation and internal

quotation marks omitted). Lastly, to evaluate the improper purpose prong, we must

review the evidence to ascertain whether the pleading was filed for “any purpose

other than one to vindicate rights . . . or to put claims of right to a proper test.” Mack

v. Moore, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992) (citation and internal

quotation marks omitted).

 It must be noted, however, that “just because a plaintiff is eventually

unsuccessful in [his] claim, does not mean the claim was inappropriate or

unreasonable.” Grover v. Norris, 137 N.C. App. 487, 495, 529 S.E.2d 231, 235 (2000).

 In the instant case, after the trial court announced its decision to grant

Defendant-Mother primary physical custody of the parties’ child, Plaintiff-Father

filed a pro se motion to “open evidence.” Defendant-Mother responded with a motion

for sanctions. The trial court allowed Plaintiff-Father’s trial attorney to withdraw,

and Plaintiff-Father hired second counsel who promptly filed a Rule 59 motion, and

soon thereafter, an amended Rule 59 motion, on essentially the same grounds as

alleged by Plaintiff-Father in his pro se motion. Plaintiff-Father then took a dismissal

 - 24 -
 JONNA V. YARAMADA

 Opinion of the Court

of his pro se motion. Defendant-Mother responded to the amended Rule 59 motion by

filing a second motion for sanctions, asserting that Plaintiff-Father was improperly

seeking to introduce evidence that he never provided in discovery or during trial, and

that his motions were not well grounded in fact, were not filed in good faith, and were

interposed for an improper purpose. Defendant-Mother alleged that Plaintiff-Father

was “merely upset with the [trial c]ourt’s decision.”

 The trial court agreed with Defendant-Mother, finding that Plaintiff-Father’s

three motions were “not supported by the facts or the law,” and “were filed in bad

faith.” Concluding that “[t]his is a frivolous action under the meaning of Rule 11 of

the North Carolina Rules of Civil Procedure,” the trial court assessed Plaintiff-Father

$3,131.00 in attorney’s fees, payable to Defendant-Mother.

 On appeal, Plaintiff-Father maintains that he acted in good faith with regard

to all three motions, and through counsel with regard to the Rule 59 and amended

Rule 59 motions. Plaintiff-Father asserts that he was properly attempting to obtain

relief from the trial court’s custody order in each motion by (1) convincing the trial

court that it erred in the admission of evidence over his objection, to his prejudice, (2)

exposing Defendant-Mother’s misrepresentations to the trial court, and (3) bringing

newly discovered evidence to the trial court’s attention.

 1. Sufficiency of the Factual and Legal Bases

 - 25 -
 JONNA V. YARAMADA

 Opinion of the Court

 The evidence does not support the trial court’s assessment of sanctions against

Plaintiff-Father on the ground that his post-trial motions had no basis in fact or law.

 Plaintiff-Father first filed his pro se motion to open evidence, which Defendant-

Mother’s counsel describes as essentially asserting the same facts as in the Rule 59

and amended Rule 59 motions filed by his second attorney. There is no dispute that

Plaintiff-Father sought the same relief in his pro se motion as in the Rule 59 motions.

At the Rule 59 hearing, Plaintiff-Father’s second attorney told the trial court that

Plaintiff-Father came to her and asked that she help him. She then “spoke to him . .

. at length,” went “through all the evidence,” and took “a bit of time on this and . . .

looked at the order.” Presumably, Plaintiff-Father’s second attorney considered those

facts, determined that the facts were sufficient to warrant a legally sound motion

under Rule 59, and then drafted, signed, and filed the Rule 59 and amended Rule 59

motions. Thereafter, Plaintiff-Father dismissed his pro se motion. There are no

allegations that Plaintiff-Father misled his attorney regarding the facts or

circumstances of his case.

 In light of the substantial similarity of Plaintiff-Father’s dismissed pro se

motion, the Rule 59 motion, and the amended Rule 59 motion, we will focus our

analysis on the Rule 59 motions.

 It is well established that “a represented party may rely on his attorney’s

advice as to the legal sufficiency of his claims[.]” Bryson, 330 N.C. at 663, 412 S.E.2d

 - 26 -
 JONNA V. YARAMADA

 Opinion of the Court

at 337. Where Plaintiff-Father did not misrepresent the facts to his counsel, it was

not unreasonable for Plaintiff-Father to believe, on the basis of his attorney’s superior

knowledge and skill, together with her willingness to undertake the pursuit of the

Rule 59 motion on his behalf, that his motions were well grounded in fact and in law.

 This Court addressed a similar issue in Grubbs v. Grubbs, 252 N.C. App. 265,

796 S.E.2d 822, 2017 WL 892564 (2017) (unpublished). In Grubbs, the defendant

sought Rule 11 sanctions for allegedly improper motions interposed in a domestic

matter. Grubbs, 2017 WL 892564, at *7. The trial court concluded that the verified

motions were “not well grounded in fact, and not warranted by existing law and [were

interposed] for an improper purpose,” and imposed Rule 11 sanctions against the

plaintiff as well as her attorney. Id. at *11. We determined that, absent an improper

motive, Rule 11 sanctions should not be assessed against a client who relies in good

faith on the advice of counsel:

 It is the rare client who understands the strategy and
 tactics of domestic litigation, as it is practiced in District
 Court. The [d]efendant asks us to impute the knowledge of
 the effects of these motions to [the attorney’s] client, [the
 p]laintiff. It is more likely [the attorney] prepared the
 affidavit for his client and she signed it on advice of
 counsel. . . . . Without a specific finding from the court
 which shows [the p]laintiff had knowledge of the effect of
 signing the motion would have on court proceedings and
 took this action to gain some temporary tactical advantage,
 we are unpersuaded that a signature alone would support
 Rule 11 sanctions against a client acting on an attorney’s
 advice.

 - 27 -
 JONNA V. YARAMADA

 Opinion of the Court

Id. at *15.

 Grubbs is an unpublished opinion and is not, therefore, binding legal authority.

See N.C.R. App. P. 30(e)(3). Nevertheless, we find its reasoning persuasive, and we

hereby adopt it.

 In that Plaintiff-Father acted on the advice of counsel, and there is no evidence

that he misled counsel as to the relevant facts or posture of the case, the assessment

of sanctions against him on the grounds that his motions were not well grounded in

fact or were not warranted by existing law is not merited. Therefore, in the present

case, the trial court’s findings do not support the imposition of Rule 11 sanctions on

these bases against Plaintiff-Father.

 2. Improper Purpose

 Nonetheless, a violation of any one of the three prongs under a Rule 11 analysis

will support the imposition of sanctions. Williams, 127 N.C. App. at 423, 490 S.E.2d

at 240-41. Thus, we now review the improper purpose prong of the Rule 11 analysis.

 An improper purpose is “any purpose other than one to vindicate rights or to

put claims of right to a proper test.” Persis Nova Constr. Inc. v. Edwards, 195 N.C.

App. 55, 63, 671 S.E.2d 23, 28 (2009) (citation omitted). Our Supreme Court has

determined that “[p]arties, as well as attorneys, may be subject to sanctions for

violations of the improper purpose prong of Rule 11.” Bryson, 330 N.C. at 656, 412

S.E.2d at 333. “[A] represented party . . . will be held responsible if his evident

 - 28 -
 JONNA V. YARAMADA

 Opinion of the Court

purpose is to harass, persecute, otherwise vex his opponents, or cause them

unnecessary cost or delay.” Id. at 663, 412 S.E.2d at 337.

 The existence of an improper purpose is determined from the totality of the

circumstances. See Mack, 107 N.C. App. at 93-94, 418 S.E.2d at 689. “[T]he relevant

inquiry is whether the existence of an improper purpose may be inferred from the

alleged offender’s objective behavior.” Id. at 93, 685 S.E.2d at 689. The burden is on

the movant to prove, by a preponderance of the evidence, that the pleading has been

interposed for an improper purpose. Auto. Grp., 230 N.C. App. at 447-48, 750 S.E.2d

at 566-67.

 In the present case, Defendant-Mother asserted that Plaintiff-Father filed the

pro se motion, and later the Rule 59 and amended Rule 59 motions, because he was

“merely upset with the [trial c]ourt’s decision[.]” This is usually the case in the wake

of a custody trial and, standing alone, does not constitute an improper purpose.

Indeed, it is likely that at least one party in any custody trial, if not both, will be

unhappy with the trial court’s decision. It is not uncommon for counsel to then file a

Rule 59 motion seeking to present additional evidence. See, e.g., Faulkenberry v.

Faulkenberry, 169 N.C. App. 428, 431-32, 610 S.E.2d 237, 239-40 (2005); Senner v.

Senner, 161 N.C. App. 78, 84-85, 587 S.E.2d 675, 679 (2003). Here, Defendant-Mother

offered no evidence to the trial court that Plaintiff-Father interposed his motions “to

gain some temporary tactical advantage,” to cause unnecessary expense or delay, or

 - 29 -
 JONNA V. YARAMADA

 Opinion of the Court

to advance some other improper motive. Grubbs, 2017 WL 892564 at *15. As the

parties seem to agree, Plaintiff-Father’s purpose was to get more evidence before the

trial court and obtain equally shared physical custody of the parties’ minor child,

rather than to personally or financially injure Defendant-Mother or to delay the

proceedings.

 Defendant-Mother had the burden of proving that the motions were filed for

an improper purpose in violation of Rule 11, which she failed to satisfy. Therefore,

the evidence does not support the finding of fact that Plaintiff-Father filed the

motions in bad faith.

 Accordingly, that part of the trial court’s 8 December 2017 order imposing

sanctions is reversed.

 V. Child Custody Order

 Plaintiff-Father next argues that “[t]he trial court erred as a matter of law in

awarding primary custody of the child to . . . Defendant[-Mother],” and challenges

several of the trial court’s findings of fact. Specifically, he asserts that findings of fact

9, 10, 15, 17, 18, 19, 20, 21, 24, and 27 are not supported by competent evidence.

 A. Appellate Jurisdiction

 As a threshold matter, we must determine whether this Court has jurisdiction

to review the child custody order. Although the child custody order was entered on

31 March 2017, Plaintiff-Father filed notice of appeal to this Court on 15 December

 - 30 -
 JONNA V. YARAMADA

 Opinion of the Court

2017—well beyond the ordinary period within which an appeal may be timely filed.

See N.C.R. App. P. 3(c)(1). However, for the following reasons, the appeal is properly

before this Court.

 “Any party entitled by law to appeal from a judgment or order of a superior or

district court rendered in a civil action . . . may take appeal by filing notice of appeal

with the clerk of superior court[.]” N.C.R. App. P. 3(a). The notice of appeal must be

filed “within thirty days after entry of judgment.” N.C.R. App. P. 3(c)(1). “Failure to

give timely notice of appeal . . . is jurisdictional, and an untimely attempt to appeal

must be dismissed.” Booth v. Utica Mutual Ins., 308 N.C. 187, 189, 301 S.E.2d 98, 99-

100 (1983) (per curiam).

 Nevertheless, where a party files a timely Rule 59 motion requesting a new

trial, “the thirty-day period for taking appeal is tolled as to all parties until entry of

an order disposing of the motion and then runs as to each party from the date of entry

of the order[.]” N.C.R. App. P. 3(c)(3). A motion for a new trial pursuant to Rule 59

“shall be served not later than 10 days after entry of the judgment.” N.C. Gen. Stat.

§ 1A-1, Rule 59(b).

 Entry and service of judgments are governed by Rule 58. “[A] judgment is

entered when it is reduced to writing, signed by the judge, and filed with the clerk of

court[.]” Id. § 1A-1, Rule 58. After entry, a copy of the judgment shall be served “upon

all other parties within three days.” Id. § 1A-1, Rule 58. The trial judge may designate

 - 31 -
 JONNA V. YARAMADA

 Opinion of the Court

one of the parties to “serve a copy of the judgment upon all other parties within three

days after the judgment is entered.” Id. Moreover, “[a]ll time periods within which a

party may further act pursuant to . . . Rule 59 shall be tolled for the duration of any

period of noncompliance with this service requirement,” provided, however, that “no

time period under . . . Rule 59 shall be tolled longer than 90 days from the date the

judgment is entered.” Id. (emphasis added). Service and proof of service must comply

with Rule 5 of the North Carolina Rules of Civil Procedure. Id.

 In the present case, the trial court tasked Defendant-Mother’s attorney with

drafting the order at the conclusion of the custody hearing. Between the date of the

hearing and the date on which the order was entered, the trial court permitted

Plaintiff-Father’s attorney to withdraw from the case. Thus, Defendant-Mother

should have served the custody order on Plaintiff-Father, as he was not represented

by counsel when the order was entered. See N.C. Gen. Stat. § 1A-1, Rule 5(b)

(providing that “all pleadings subsequent to the original complaint and other papers

required or permitted to be served[ ]” shall be served on the party “[i]f the party has

no attorney of record”). However, on 31 March 2017, Defendant-Mother’s counsel

served a copy of the order on Plaintiff-Father’s former counsel. Plaintiff-Father

received notice of the judgment on 10 April 2017, by first class mail from his former

counsel.

 - 32 -
 JONNA V. YARAMADA

 Opinion of the Court

 Defendant-Mother failed to abide by the service requirements of Rule 58 by

serving the custody order on Plaintiff-Father’s former attorney rather than on

Plaintiff-Father. Because “[a]ll time periods within which a party may further act

pursuant to . . . Rule 59 shall be tolled for the duration of any period of noncompliance

with this service requirement,” the deadline for Plaintiff-Father to serve his motion

for a new trial on Defendant-Mother’s counsel was tolled until ten days after Plaintiff-

Father’s receipt of the custody order on 10 April 2017, rather than ten days after

entry of the custody order. D.G. II, LLC v. Nix, 213 N.C. App. 220, 225, 713 S.E.2d

140, 145 (2011) (citation omitted) (concluding that, after defendants’ failure to serve

the plaintiff with the judgment, the ten-day period within which the plaintiff could

serve its motion for new trial was not triggered until ten days after the plaintiff’s

receipt of the judgment from the county courthouse, plus three days for service by

mail).

 In the case at bar, Plaintiff-Father served his Rule 59 motion for a new trial on

12 April 2017, two days after receiving a copy of the order. Thus, his motion was

timely served. Moreover, we conclude that although Plaintiff-Father’s motion was

ultimately unsuccessful, it was nevertheless sufficient to toll the thirty-day period for

noticing an appeal. Because the trial court entered its order on Plaintiff-Father’s Rule

59 motion and sanctions on 8 December 2017, his appeal to this Court on 15 December

2017 was timely.

 - 33 -
 JONNA V. YARAMADA

 Opinion of the Court

 B. Standard of Review

 On review of a child custody matter,

 the trial court’s findings of fact are conclusive on appeal if
 supported by substantial evidence, even if there is
 sufficient evidence to support contrary findings.
 Substantial evidence is such relevant evidence as a
 reasonable mind might accept as adequate to support a
 conclusion. Unchallenged findings of fact are binding on
 appeal. The trial court’s conclusions of law must be
 supported by adequate findings of fact. Absent an abuse of
 discretion, the trial court’s decision in matters of child
 custody should not be upset on appeal.

Carpenter v. Carpenter, 225 N.C. App. 269, 270, 737 S.E.2d 783, 785 (2013) (citation

omitted).

 “Our trial courts are vested with broad discretion in child custody matters.

This discretion is based upon the trial courts’ opportunity to see the parties; to hear

the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed

record[.]” Huml v. Huml, ___ N.C. App. ___, ___, 826 S.E.2d 532, 541 (2019) (citation

omitted).

 C. Child Custody Order

 In the instant case, Plaintiff-Father contends that the following findings of fact

are not supported by competent evidence: 9, 10, 15, 17, 18, 19, 20, 21, 24, and 27.

 9. Plaintiff[-Father] filed a complaint seeking emergency
 custody in this case in 2015 with an allegation that
 Defendant[-Mother] threatened to kill herself and other
 allegations against her. However, he took the stand during
 this hearing and testified there were no problems and that

 - 34 -
 JONNA V. YARAMADA

 Opinion of the Court

the parties should share joint custody. The court finds this
troubling and that if the allegations in the complaint were
of a real concern to Plaintiff[-Father], he would have
testified as such and attempted to convince the court that
Defendant[-Mother] is a problem. Therefore, the [c]ourt
finds that Plaintiff[-Father’s] claims in the complaint about
Defendant[-Mother are] not credible.

10. Plaintiff[-Father] committed acts of domestic violence
against Defendant[-Mother], including one incident where
he left a scar on her forearm. He also punched holes in the
wall.

 ....

15. . . . Plaintiff[-Father] spends significant time playing
cricket. The [c]ourt has no issue with Plaintiff[-Father]
enjoying himself and blowing off steam; however, if he is
going to be out seven or eight hours playing cricket or some
other activity, the child should be with his mother if she is
available to provide care.

 ....

17. Defendant[-Mother] was the primary caretaker of the
child prior to the parties’ separation.

18. Since the separation, . . . Defendant[-Mother] has taken
care of the child while in her care and it is unclear to the
[c]ourt whether Plaintiff[-Father] or his parents have been
the primary caretaker while in his care.

19. The court is concerned about . . . Plaintiff[-Father’s]
request for emergency custody. The [c]ourt signed an ex-
parte emergency custody order primarily to address the
alleged threat that Defendant[-Mother] would remove the
child from the country. Plaintiff[-Father] alleged that
Defendant[-Mother] could telecommute from India, which
was untrue and the [c]ourt also finds that . . . Plaintiff[-
Father] continued with his façade in the Emergency

 - 35 -
 JONNA V. YARAMADA

 Opinion of the Court

complaint that he is spending or wants to spend as much
time with the child as possible. There is also no credible
evidence presented at the trial of this matter that
Defendant[-Mother] was a flight risk with the minor child.
In fact, Defendant[-Mother] traveled to India with the child
in 2015 and brought him back to North Carolina.

20. Plaintiff[-Father] alleged family tensions and a
property dispute in India as the reasons the minor child
should not be allowed to be taken to India. The [c]ourt does
not find this concern to be credible. They both traveled to
India separately with the child in 2015. They both have
family in India. Plaintiff[-Father] did not allege during the
trial that he had any concern that Defendant[-Mother]
would attempt to keep the minor child in India and not
return [the child] to the United States.

21. The [c]ourt is concerned that Plaintiff[-Father’s]
mother and father may be a source of tension in . . .
Plaintiff[-Father’s] home. The [c]ourt finds Defendant[-
Mother’s] contention credible that the child’s paternal
grandparents are more hostile than the maternal
grandparents.

 ....

24. In Plaintiff[-Father’s] home, the minor child has either
been sleeping on the floor in [the] hallway or with
Plaintiff[-Father’s] parents in their bed. Plaintiff[-
Father’s] arrangement in his home is not suitable for a
continued fifty-fifty physical custody schedule.

 ....

27. While there is this litigious issue going on in India over
real property there, the court does not find that there is any
weight to the concern expressed by Plaintiff[-Father] . . . of
this child being exposed to that. In fact, the [c]ourt believes
that the child cannot be any more exposed to it than he
already is living with the paternal grandparents in

 - 36 -
 JONNA V. YARAMADA

 Opinion of the Court

 Plaintiff[-Father’s] home. There should be no restrictions
 on either parent’s ability to travel to India with their minor
 child.

 A review of the record and trial transcript reveals that each of these findings

is supported by competent evidence. We group the challenged findings by their

underlying subject-matter.

 1. Findings Related to Plaintiff-Father’s Behavior

 Findings of fact 9, 10, 15, and 19 focus on Plaintiff-Father’s behavior, and each

was supported by competent evidence at trial.

 Plaintiff-Father challenges findings of fact 9 and 19, regarding the veracity

and sincerity of Plaintiff-Father’s allegations in support of his request for emergency

custody. These findings were amply supported by competent evidence at trial.

Plaintiff-Father’s fear that Defendant-Mother was suicidal, along with the other very

troubling allegations of his complaint, was not consonant with his testimony that he

was seeking “50-50 custody[ ] moving forward,” or his failure to testify regarding

those allegations at trial.

 In addition, Plaintiff-Father’s concern that Defendant-Mother would flee to

India with the child and telecommute was not supported by the evidence at trial.

Plaintiff-Father did not dispute Defendant-Mother’s testimony that she could not

telecommute from India. Indeed, in Plaintiff-Father’s opening statement, his counsel

affirmatively explained that Plaintiff-Father’s “concern, at least as he set out in his

 - 37 -
 JONNA V. YARAMADA

 Opinion of the Court

discovery responses, was not that [Defendant-Mother] would keep the child in India.

That’s not the concern. It’s not a flight issue.”

 The trial court’s finding of fact 10, that Plaintiff-Father had committed acts of

domestic violence, was also supported by competent evidence. Plaintiff-Father

contends that this finding was based on erroneously admitted police reports.

Assuming, arguendo, that the police reports were admitted into evidence in error,

this finding was supported by ample other evidence at trial. Defendant-Mother

testified that Plaintiff-Father punched the wall and hit her on a number of occasions,

and that at least one of those acts of domestic violence occurred in the minor child’s

presence. Plaintiff-Father did not testify to the contrary.

 Plaintiff-Father also challenges finding of fact 15, in which the trial court found

that he “spends significant time playing cricket,” during which time Defendant-

Mother should be permitted to care for the child rather than a third party. The parties

both provided competent evidence to support this finding. Although he argues on

appeal that “he spent less than 1% of his Custodial time in playing Cricket,” Plaintiff-

Father testified that cricket matches can last anywhere from three to seven hours.

Defendant-Mother and another witness also testified to the substantial amount of

time that Plaintiff-Father spends playing cricket.

 In short, each of these challenged findings was supported by competent

evidence.

 - 38 -
 JONNA V. YARAMADA

 Opinion of the Court

 2. Findings Related to Travel to India

 Findings of fact 20 and 27 address Plaintiff-Father’s concerns about “family

tensions and a property dispute in India as the reasons the minor child should not be

allowed to be taken to India.” Each finding was supported by competent evidence at

trial.

 On appeal, Plaintiff-Father argues that, in not finding his concerns to be

credible, the “[t]rial court’s reasoning here is defective,” because the trial court

improperly judged “the credibility of [his] concern” and did not afford the affidavits

he submitted from the tenants in India the weight to which he thinks they were

entitled. However, while the tenants attested to the maternal grandmother’s verbal

abuse of them in the presence of the child, Plaintiff-Father testified that he was not

concerned about Defendant-Mother traveling with the child to India.

 “Although a party may disagree with the trial court’s credibility and weight

determinations, those determinations are solely within the province of the trial

court.” Kabasan v. Kabasan, 257 N.C. App. 436, 471, 810 S.E.2d 691, 713 (2018)

(citation omitted). Accordingly, both of these findings are supported by competent

evidence.

 3. Findings Related to the Minor Child’s Care

 Findings of fact 17, 18, 21, and 24 deal with the child’s care and living

situation, and each finding was supported by competent evidence at trial.

 - 39 -
 JONNA V. YARAMADA

 Opinion of the Court

 The trial court found that Defendant-Mother cares for the child when he is in

her physical custody, but that it was unclear whether Plaintiff-Father or his parents

care for the child when he is in Plaintiff-Father’s physical custody. Defendant-Mother

testified at trial that Plaintiff-Father’s parents were caring for the minor child more

than Plaintiff-Father was admitting: Plaintiff-Father is not “taking care of the baby

by himself. Even now, he is depending on his parents. So I doubt if he can put that

extra effort as a single parent to take care of [the child] because he didn’t do it on his

own . . . for about a year now,” since his parents moved to the United States. Finding

of fact 18 is supported by competent evidence.

 Defendant-Mother’s testimony also supports finding of fact 21, that the

paternal grandparents “may be a source of the tension in [Plaintiff-Father’s] home.”

The trial court explicitly stated that it found Defendant-Mother’s “contention credible

that the child’s paternal grandparents are more hostile than the maternal

grandparents.” This is the trial court’s prerogative. See id. at 440, 810 S.E.2d at 696.

Thus, this finding is supported by competent evidence.

 Plaintiff-Father also challenges finding of fact 24, regarding the minor child’s

sleeping arrangements while in the physical custody of Plaintiff-Father. He and his

parents live in a 1,000 square foot, one-bedroom apartment, and his parents sleep in

the bedroom. When questioned about the minor child’s sleeping arrangements,

Plaintiff-Father testified that “we sleep in the bedroom, and sometimes we sleep in

 - 40 -
 JONNA V. YARAMADA

 Opinion of the Court

the hall.” He explained that he would make a separate bed for the minor child if they

were to sleep in the hall, but that most of the time the child stays in the bedroom and

shares the bed with Plaintiff-Father’s parents. Plaintiff-Father asserted in his Rule

59 motion—as well as on appeal—that “hall” in Indian culture actually refers to a

living room. However, he failed to correct his testimony at the hearing, or to explain

why that was materially different than sleeping in the hall. Hence, this finding is

supported by competent evidence.

 Finally, although Plaintiff-Father’s challenge to finding of fact 17, that

Defendant-Mother has been the primary caretaker for the child, appears to have been

abandoned, it was supported by Defendant-Mother’s testimony that she “ha[d] been

the primary caregiver of the child ever since he was born.” This finding is supported

by competent evidence.

 4. Summary of Challenged Findings

 Each of the challenged findings of fact is supported by competent evidence.

Indeed, many of the findings are based directly on Plaintiff-Father’s testimony. In

sum, Plaintiff-Father generally contends that the trial court erred by overlooking

evidence that he presented at trial, or by making a credibility determination with

which he disagrees. These arguments go to the weight to be given to the evidence,

and to evaluations of credibility which are within the discretion of the trial court.

“[W]here the trial court’s findings of fact are supported by competent evidence, and

 - 41 -
 JONNA V. YARAMADA

 Opinion of the Court

the findings of fact, in turn, support the trial court’s conclusions of law, the decision

of the trial court will be affirmed. This Court will not reweigh the evidence.” Id.

(citation omitted) (emphasis added). Plaintiff-Father’s challenges to these findings of

fact must therefore fail.

 VI. Child Support Guidelines

 Lastly, we return to the child support order, in which the trial court found it

“reasonable to use 125 overnights for [Plaintiff-Father] and 240 overnights for

[Defendant-Mother] for purposes of calculations under the child support guidelines.”

Defendant-Mother asserts that the trial court erred in using Worksheet B to calculate

Plaintiff-Father’s prospective child support obligation. More specifically, she argues

that “there was no evidence presented from which the trial court could find that 125

overnights [with Plaintiff-Father] was a reasonable number of overnights to use” in

determining Plaintiff-Father’s child support obligation.

 A. Appellate Jurisdiction

 This matter is properly addressed by cross-appeal, in that Defendant-Mother

“seek[s] affirmative relief in the appellate division[,]” Alberti v. Manufactured Homes,

Inc., 329 N.C. 727, 739, 407 S.E.2d 819, 826 (1991), from a child support order that

she contends was entered in error. See Harllee v. Harllee, 151 N.C. App. 40, 51, 565

S.E.2d 678, 684 (2002) (“[T]he proper procedure for presenting alleged errors that

 - 42 -
 JONNA V. YARAMADA

 Opinion of the Court

purport to show that the judgment was erroneously entered and that an altogether

different kind of judgment should have been entered is a cross-appeal.”).

 Although Defendant-Mother failed to timely cross-appeal from the child

support order, this Court has the discretion to issue a writ of certiorari “in appropriate

circumstances . . . to permit review of the judgments and orders of trial tribunals

when the right to prosecute an appeal has been lost by failure to take timely action,”

N.C.R. App. P. 21(a)(1), including review of the merits of a cross-appeal. See

Ehrenhaus v. Baker, 243 N.C. App. 17, 32, 776 S.E.2d 699, 709 (2015). Defendant-

Mother petitioned for writ of certiorari, and has shown good and sufficient cause for

this Court to issue the writ. Accordingly, in our discretion, we allow the writ.

 B. Standard of Review

 A trial court’s child support order is “accorded substantial deference by

appellate courts and our review is limited to a determination of whether there was a

clear abuse of discretion. To support a reversal, an appellant must show that the

trial court’s actions were manifestly unsupported by reason.” Head v. Mosier, 197

N.C. App. 328, 332, 677 S.E.2d 191, 195 (2009) (internal quotation marks and

citations omitted). “Failure to follow the [Child Support G]uidelines constitutes

reversible error.” Rose v. Rose, 108 N.C. App. 90, 93, 422 S.E.2d 446, 447 (1992).

 C. Child Support Guidelines

 - 43 -
 JONNA V. YARAMADA

 Opinion of the Court

 It is well settled that “[t]he court shall determine the amount of child support

payments by applying the presumptive guidelines. The Guidelines apply as a

rebuttable presumption in all legal proceedings involving the child support obligation

of a parent.” Hart v. Hart, ___ N.C. App. ___, ___, 836 S.E.2d 244, 251 (2019) (citations

and internal quotation marks omitted). The Guidelines provide that Worksheet A is

to be used “when one parent . . . has primary physical custody of all of the children

for whom support is being determined. A parent (or third party) has primary physical

custody of a child if the child lives with that parent (or custodian) for 243 nights or

more during the year”; the use of Worksheet B is appropriate when both “[p]arents

share custody of a child if the child lives with each parent for at least 123 nights

during the year and each parent assumes financial responsibility for the child’s

expenses during the time the child lives with that parent.” Guidelines, Ann. R. 5.

 Here, Defendant-Mother contends that the trial court erred in using

Worksheet B to calculate Plaintiff-Father’s prospective child support obligation. She

challenges finding of fact 10 as not being supported by competent evidence at trial:

 10. For the period February 2017 to July 2017 based upon
 the custody order entered by the [c]ourt, the court finds it
 reasonable to use 125 over nights for the [Plaintiff-Father]
 and 240 overnights for the [Defendant-Mother] for
 purposes of calculations under the child support
 guidelines.

Defendant Mother argues that “the evidence presented suggested that the correct

number of overnights was 261 for [Defendant-Mother] and 104 for [Plaintiff Father].”

 - 44 -
 JONNA V. YARAMADA

 Opinion of the Court

 The child custody order served as the basis for the trial court’s use of

Worksheet B in calculating the prospective child support obligation. To accommodate

the parties’ commitment to regularly travel to India with the minor child, the order

permits each parent to have physical custody of the child for five weeks of

uninterrupted international travel per year. Plaintiff-Father argued at the child

support hearing that the use of Worksheet B to calculate his child support obligation

was proper because of the annual five-week extended visitation period. Including the

five-week extended visitation, Plaintiff-Father calculated that he had 128 days in

2017, 129 days in 2018, and 124 days in 2019. However, the parties’ extensive travel

plans do not necessarily justify the use of Worksheet B.

 It is not appropriate to use Worksheet B in cases involving extended visitation.

The explicit instructions set forth on Worksheet B3 address the issue of extended

visitation: “Worksheet B should be used only if both parents have custody of the

child(ren) for at least one-third of the year and the situation involves a true sharing

of expenses, rather than extended visitation with one parent that exceeds 122

overnights.” Form AOC-CV-628, Side Two, Rev. 1/15 (emphases added).4 If the trips

to India are extended visitation, rather than a “situation involv[ing] a true sharing of

expenses” as contemplated by the instructions for Worksheet B, that travel time

 3 This Court has previously referenced the instructions on Worksheet B in determining
whether its use was appropriate. See, e.g., Scotland Cty. Dep’t of Soc. Servs. v. Powell, 155 N.C. App.
531, 539, 573 S.E.2d 694, 699 (2002).
 4 The identical language remains in the January 2019 iteration of Worksheet B.

 - 45 -
 JONNA V. YARAMADA

 Opinion of the Court

should not be included in determining the number of overnights the child would stay

with each parent.

 Accordingly, we vacate the child support order, and remand for the trial court

to make additional findings as to whether the number of overnights that the minor

child has with Plaintiff-Father exceeds 122 overnights, and if so, whether that is the

result of extended visitation or whether the custodial arrangement is a “situation

involv[ing] a true sharing of expenses.” Whether additional evidence or a hearing is

necessary, or whether the case may be decided based on the existing record, is in the

discretion of the trial court.

 Conclusion

 For the reasons stated herein, we vacate the 20 November 2017 child support

order and remand for further proceedings consistent with this opinion. We also

reverse that part of the 8 December 2017 order imposing Rule 11 sanctions. The

remainder of the 8 December 2017 order and the 31 March 2017 custody order are

affirmed.

 AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART AND

 REMANDED.

 Judges ARROWOOD and HAMPSON concur.

 - 46 -